**RECORD NO. 15-13830**

In The

# United States Court of Appeals
### For The Eleventh Circuit

## SAVANNAH COLLEGE OF ART AND DESIGN, INC.,

*Plaintiff – Appellant*,

## v.

## SPORTSWEAR, INC., d.b.a. PrepSportswear,

*Defendant – Appellee*.

### ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF GEORGIA

_____

### BRIEF OF APPELLEE

_____

Arthur A. Gardner
GARDNER GROFF GREENWALD & VILLANUEVA, PC
2018 Powers Ferry Road, Suite 800
Atlanta, Georgia 30339
(770) 984-2300

*Counsel for Appellee*

Leslie C. Ruiter *(Pro Hac Vice)*
Bradford J. Axel *(Pro Hac Vice)*
STOKES LAWRENCE, P.S.
1420 Fifth Avenue, Suite 3000
Seattle, Washington 98101
(206) 626-6000

*Counsel for Appellee*

## CERTIFICATE OF INTERESTED PERSONS AND
## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and 11th Circuit Rules

26.1-1 and 26.1-3, Defendant-Appellee Sportswear, Inc. hereby certifies that the

following persons and/or entities have an interest in the outcome of this case:

Axel, Bradford J.

Creasman, W. Scott

Gardner, Arthur A.

Mullally, Kelly Casey

Ruiter, Leslie C.

Savannah College of Art and Design, Inc.

Sportswear, Inc.

Thrash, Judge Thomas W.

Trimble, Seth K.

Respectfully submitted this 4th day of November, 2015.

| | |
|---|---|
| */s/ Arthur A. Gardner* | */s/ Bradford J. Axel* |
| Arthur A. Gardner | Leslie C. Ruiter |
| GARDNER GROFF GREENWALD & | *(Pro Hac Vice admission)* |
|   VILLANUEVA, PC | Bradford J. Axel |
| 2018 Powers Ferry Road, Suite 800 | *(Pro Hac Vice admission)* |
| Atlanta, Georgia 30339 | STOKES LAWRENCE, P.S. |
| (770) 984-2300 | 1420 Fifth Avenue, Suite 3000 |
| | Seattle, WA 98101-2393 |
| | (206) 626-6000 |
| | E-mail: lcr@stokeslaw.com |
| | E-mail: bja@stokeslaw.com |
| *Attorneys for Defendant-Appellee* | *Attorneys for Defendant-Appellee* |

## STATEMENT REGARDING ORAL ARGUMENT

Defendant-Appellee does not request oral argument because the facts and legal arguments are adequately presented in the briefs and record and believes that the decisional process would not be significantly aided by oral argument. 11th Cir. R. 28-1; Fed. R. App. P. 34(a)(2)(C).

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS AND

CORPORATE DISCLOSURE STATEMENT .......................................................C-1

STATEMENT REGARDING ORAL ARGUMENT ................................................i

TABLE OF CITATIONS .........................................................................................vi

STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION.....1

STATEMENT OF THE ISSUES................................................................................2

STATEMENT OF THE CASE...................................................................................3

     I.      Nature of the Case and Disposition Below ...........................................3

     II.     Statement of Facts ................................................................................4

          A.     The University...........................................................................4

          B.     Prep Sportswear ........................................................................6

     III.    Standard and Scope Of Review..............................................................9

SUMMARY OF THE ARGUMENT .......................................................................10

ARGUMENT AND CITATIONS OF AUTHORITY ............................................11

     I.      The University Failed to Establish Trademark Rights as to

          Clothing ..............................................................................................11

          A.     The University Does Not Have Registrations for the

               Alleged Marks as to Clothing ...................................................11

B.      The University Did Not Come Forward with Evidence to Support a Finding that it Owned Common Law Clothing Trademarks ................................................................12

II.    The University's Effort to Distinguish *Crystal Entertainment* is Unavailing ................................................................14

III.   Even if the University Had Established Ownership of Common Law Clothing Marks, It Still Failed to Present Sufficient Evidence of a Likelihood of Confusion ................................17

     A.      Mark Strength ................................................19

     B.      Similarity of Marks ................................................20

     C.      Similarity of Goods/Services ................................................21

     D.      Sales Methods ................................................22

     E.      Advertising Methods – The University Does Not Advertise ................................................24

     F.      Intent to Confuse ................................................25

     G.      Actual Confusion ................................................26

     H.      Sufficient Likelihood of Confusion Evidence was Not Presented ................................................28

IV.   The University Abandoned Any Trademark Rights it Owned For Clothing By Its Naked Licensing ................................29

iii

V.    The University Does Not Have a "Merchandising Right".................31

    A.    Likelihood of Confusion is the *Sine Qua Non* of

        Infringement.................................................................32

    B.    A Merchandising Right Conflicts With the Functionality

        Doctrine.....................................................................34

    C.    The "Confusion" Underlying the Merchandising Theory

        is not the "Confusion" Required to Support an

        Infringement Claim.....................................................35

VI.    The District Court's Partial Granting of the Motion to Strike

Was not An Abuse of Discretion..........................................36

    A.    The Website (also referred to as the Article) Is Not In the

        Record .......................................................................38

    B.    The District Court Applied the Correct Law, and Did So

        Properly.....................................................................40

    C.    The "Evidence" Was Not Produced In Discovery and

        Cannot Be Used .........................................................42

    D.    The New "Evidence" is Contrary To the University's

        Discovery Responses ..................................................45

    E.    A Footnote In a Brief Mentioning a Website Or An

        Article Is Not Evidence..............................................46

F.     The "Evidence" the University Seeks to Have Considered Is No Longer Available.............................................................47

G.    There Is No Harm In Excluding the Website (and/or Article) .......................................................................................48

CONCLUSION......................................................................................................49

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

# TABLE OF CITATIONS

**Page(s)**

## CASES

*A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*,

    237 F.3d 198 (3d Cir. 2000) ..........................................................26

*Am. Footwear Corp. v. Gen. Footwear Co.*,

    609 F.2d 655 (2d Cir. 1979) ..........................................................26

*Amstar Corp. v. Domino's Pizza, Inc.*,

    615 F.2d 252 (5th Cir. 1980) ........................................................27

*Atlanta Allergy & Asthma Clinic P.A. v. Allergy & Asthma of Atlanta, LLC*,

    685 F. Supp. 2d 1360 (N.D. Ga. 2010)..........................................19

*\*Board of Governors of the University of North Carolina v. Helpingstine*,

    714 F. Supp. 167 (M.D.N.C. 1989) ...............................................28

*Bonner v. City of Prichard, Ala.*,

    661 F.2d 1206 (11th Cir. 1981) .....................................................33

*Boston Professional Hockey Association v.*

*Dallas Cap & Emblem Manufacturing, Inc.*,

    510 F.2d 1004 (5th Cir. 1975) ....................................31, 32, 33, 35

*\*Chief authorities are denoted by an asterisk.*

*Brooks Shoe Mfg. Co. v. Suave Shoe Corp.*,

716 F.2d 854 (11th Cir. 1983) ...................................................................25

*Brown Bark II, L.P. v. Dixie Mills, LLC*,

732 F. Supp. 2d 1353 (N.D. Ga. 2010)........................................................11

*Bryant v. Jones*,

575 F.3d 1281 (11th Cir. 2009) .................................................................14

*Bryant v. United States Steel Corp.*,

428 F.App'x 895 (11th Cir. 2011)........................................................22, 46

*Caliber Auto. Liq. v. Premier Chry., Jeep, Dodge, LLC*,

605 F.3d 931 (11th Cir. 2010) ..............................................................18, 26

*Callaway Golf Co. v. Golf Clean, Inc.*,

915 F. Supp. 1206 (M.D. Fla. 1995) ..........................................................27

*Cameron v. Teeberry Logistics, LLC*,

920 F. Supp. 2d 1309 (N.D. Ga. 2013)........................................................41

*Capone v. Aetna Life Ins. Co.*,

592 F.3d 1189 (11th Cir. 2010) ...................................................................9

*CareFirst of Maryland, Inc. v. First Care, P.C.*,

434 F.3d 263 (4th Cir. 2006) ......................................................................27

*Citibank, N.A. v. Citibanc Group, Inc.*,

724 F.2d 1540 (11th Cir. 1984) .................................................................30

*CNA Fin. Corp. v. Brown*,

    922 F. Supp. 567 (M.D. Fla. 1996), *aff'd in relevant part*,

    162 F. 3d 1334 (11th Cir. 1998) ....................................................................30

*Colsa Corp. v. Martin Marietta Servs., Inc.*,

    133 F.3d 853 (11th Cir. 1998) ......................................................................17

*Conagra, Inc. v. Singleton*,

    743 F.2d 1508 (11th Cir. 1984) ....................................................................35

*Connecticut State Dental Ass'n v. Anthem Health Plans, Inc.*,

    591 F.3d 1337 (11th Cir. 2009) ....................................................................41

*\*Crystal Entertainment & Filmworks, Inc. v. Jurado*,

    643 F.3d 1313 (11th Cir. 2011) ...........................................................15, 16, 17

*Custom Mfg. & Eng'g, Inc. v. Midway Servs., Inc.*,

    508 F.3d 641 (11th Cir. 2007) ......................................................................18

*\*Dastar Corp. v. Twentieth Century Fox Film Corp.*,

    539 U.S. 23 (2003)..........................................................................26, 35, 36

*De La Salle High School of Concord v. Sportswear, Inc.*,

    Case No. C11-00182 (Cal. S.Ct. Oct. 22, 2012)

    (unpublished opinion) ............................................................................21, 26

*Dippin' Dots, Inc. v. Frosty Bites Distribution, LLC*,

    369 F.3d 1197 (11th Cir. 2004) ....................................................................34

*Drake v. Gen. Fin. Corp. of Louisiana*,

    119 F.2d 588 (5th Cir. 1941) ........................................................39

*Energy Four, Inc. v. Dornier Med. Sys., Inc.*,

    765 F. Supp. 724 (N.D. Ga. 1991)................................................29

*Epic Metals Corp. v. Soulier*,

    99 F.3d 1034 (11th Cir. 1996) ....................................................14

*Espino v. City of Kingsville, Tex.*,

    676 F.2d 1075 (5th Cir. 1982) ....................................................40

*Frehling Enters., Inc. v. Int'l Select Grp., Inc.*,

    192 F.3d 1330 (11th Cir. 1999) ..................................................26

*Go Med. Indus. Pty, Ltd. v. Inmed Corp.*,

    300 F. Supp. 2d 1297 (N.D. Ga. 2003), *vacated in part on different grounds*,

    471 F.3d 1264 (Fed. Cir. 2006) ..................................................29

*Goodman-Gable-Gould Co. v. Tiara Condo. Ass'n*,

    595 F.3d 1203 (11th Cir. 2010) ....................................................9

*HBP, Inc. v. Am. Marine Holdings, Inc.*,

    290 F. Supp. 2d 1320 (M.D. Fla. 2003), *aff'd*,

    129 F. App'x 601 (11th Cir. 2005)..............................................20

*In re DC Comics, Inc.*,

    689 F.2d 1042 (C.C.P.A. 1982)..................................................12

*Kelley v. Wash. Mut. Fin. Inc.*,

    Civ. No. 1:11-CV-2497-RWS, 2013 WL 5530351

    (N.D. Ga. Oct. 4, 2013) ................................................................41

*\*Kentucky Fried Chicken Corp. v. Diversified Packaging Corp.*,

    549 F.2d 368 (5th Cir. 1977) ............................................. 29-30, 33

*Kernel Records Oy v. Mosley*,

    694 F.3d 1294 (11th Cir. 2012) ............................................. 45-46

*\*KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*,

    543 U.S. 111 (2004).....................................................................36

*Leathers v. Pfizer, Inc.*,

    233 F.R.D. 687 (N.D. Ga. 2006) ..................................................45

*\*Lone Star Steakhouse & Saloon, Inc. v. Longhorn Steaks, Inc.*,

    122 F.3d 1379 (11th Cir. 1997) ...................................................33

*Mack v. Housing Auth. for the City of Athens, Ga.*,

    No. 3:09-CV-62 (CDL), 2010 WL 797211 (M.D. Ga. Mar. 3, 2010) ..........41

*Mitchell v. Ford Motor Co.*,

    318 F. App'x 821 (11th Cir. 2009).......................................... 44-45

*Moseley v. V Secret Catalogue*, *Inc.*,

    537 U.S. 418 (2003)........................................................... 35-36

*Optimum Techs., Inc. v. Henkel Consumer Adhesives, Inc.*,

    496 F.3d 1231 (11th Cir. 2007) ....................................................29

*Oreck Corp. v. U.S. Floor Systems, Inc.*,

    803 F.2d 166 (5th Cir. 1986) .......................................................27

*Parfums de Coeur, Ltd. v. Lory Lazarus*,

    83 U.S.P.Q.2d 1012, 2007 WL 683784 (TTAB Feb. 27, 2007) ..................25

*Piamba Cortes v. Am. Airlines, Inc.*,

    177 F.3d 1272 (11th Cir. 1999) ....................................................48

*\*Planetary Motion, Inc. v. Techsplosion, Inc.*,

    261 F.3d 1188 (11th Cir. 2001) ....................................................13

*Prestonettes, Inc. v. Coty*,

    264 U.S. 359 (1924)....................................................................11

*\*Qualitex Co. v. Jacobson Prods. Co.*,

    514 U.S. 159 (1995)....................................................................34

*S & Davis Int'l, Inc. v. Republic of Yemen*,

    218 F.3d 1292 (11th Cir. 2000) ....................................................39

*\*Selman v. Cobb Cnty. School Dist.*,

    449 F.3d 1320 (11th Cir. 2006) ....................................................39

*Shahar v. Bowers*,

    120 F.3d 211 (11th Cir. 1997) .....................................................39

xi

*Southern Pilot Ins. Co. v. CECS, Inc.*,

    15 F. Supp. 3d 1284 (N.D. Ga. 2013)......................................................40, 41

*Stallworth v. E-Z Serve Convenience Stores*,

    199 F.R.D. 366 (2001)....................................................................................44

*Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*,

    588 F.3d 97 (2d Cir. 2009) ............................................................................26

*Stein v. Reynolds Sec., Inc.*,

    667 F.2d 33 (11th Cir. 1982) .........................................................................33

*Suntree Tech., Inc. v. Ecosense Int'l, Inc.*,

    693 F.3d 1338 (11th Cir. 2012) .....................................................................35

*\*Supreme Assembly, Order of Rainbow for Girls v. J. H. Ray Jewelry Co.*,

    676 F.2d 1079 (5th Cir. 1982) ................................................................21, 24

*Tally-Ho, Inc. v. Coast Cmty. Coll. Dist.*,

    889 F.2d 1018 (11th Cir. 1989) .....................................................................22

*\*Tana v. Dantanna's*,

    611 F.3d 767 (11th Cir. 2010) .......................................................................18

*\*TrafFix Devices, Inc. v. Mktg. Displays, Inc.*,

    532 U.S. 23 (2001)........................................................................................34

*U.S. v. Benz*,

    740 F.2d 903 (11th Cir. 1984) .......................................................................40

*U.S. v. Brown*,

    547 F.2d 1264 (5th Cir. 1977) .........................................................................40

*U.S. v. Georgia Dep't of Natural Res.*,

    897 F. Supp. 1464 (N.D. Ga. 1995).........................................................40, 41

*\*U.S. v. Oakley*,

    744 F.2d 1553 (11th Cir. 1984) ...............................................................40, 41

*Univ. of Alabama Bd. of Trustees v. New Life Art, Inc.*,

    683 F.3d 1266 (11th Cir. 2012) ...............................................................25, 34

*University of Georgia Athletic Association v. Laite*,

    756 F.2d 1535 (11th Cir. 1985) ...............................................................*passim*

*\*Welding Servs. Inc. v. Forman*,

    509 F.3d 1351 (11th Cir. 2007) ....................................................... 19-20, 39

*Wesco Mfg., Inc. v. Tropical Attractions of Palm Beach, Inc.*,

    833 F.2d 1484 (11th Cir. 1987) ............................................................. 33-34

**STATUTES**

15 U.S.C. § 1114.......................................................................................................3

15 U.S.C. § 1114(1) ...............................................................................................21

15 U.S.C. § 1115(a) ...............................................................................................15

15 U.S.C. § 1116.......................................................................................................3

15 U.S.C. § 1121 ......................................................................................................1

15 U.S.C. § 1125 ................................................................................3

15 U.S.C. § 1125(c) ..........................................................................22

28 U.S.C. § 1291 ................................................................................1

28 U.S.C. § 1331 ................................................................................1

28 U.S.C. § 1338 ................................................................................1

28 U.S.C. § 1367 ................................................................................1

O.C.G.A. § 10-1-372 ..........................................................................3

## RULES

Fed. R. App. P. 10(a) ........................................................................39

Fed. R. Civ. P. 26 ..............................................................................43

Fed. R. Civ. P. 26(a) ..........................................................................44

Fed. R. Civ. P. 26(e) ..........................................................................44

Fed. R. Civ. P. 26(e)(1) ......................................................................44

Fed. R. Civ. P. 37(c)(1) ................................................................44, 45

Fed. R. Evid. 103(a)(2) ......................................................................39

## OTHER AUTHORITIES

*2 J. T. McCarthy, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION

(4th ed. 2015) ........................................................................12, 26, 29

*4 J. T. McCarthy, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION

(4th ed. 2015) ........................................................................ 24-25, 32

Stacey L. Dogan & Mark A. Lemley, *The Merchandising Right: Fragile*

*Theory or Fait Accompli*, 54 EMORY L. J. 461 (2005)............................................32

https://archive.org/web/............................................................................48

RESTATEMENT (THIRD) UNFAIR COMPETITION § 33 cmt. b (1995).........................29

## STATEMENT OF SUBJECT MATTER AND
## APPELLATE JURISDICTION

The United States District Court for the Northern District of Georgia has original subject matter jurisdiction over the claims in this case under 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338 and 1367. This Court has appellate jurisdiction under 15 U.S.C. § 1121 and 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

1.     Whether a plaintiff that owns no statutory or common law trademark rights to the claimed marks in connection with the sale of clothing can prevent others from printing the Alleged Marks on clothing?

2.     Whether a plaintiff can establish a likelihood of consumer confusion when: (i) the parties' goods and services are unrelated, (ii) defendant's method of sale negates the possibility of consumer confusion, (iii) there is no survey evidence of confusion or consumer perceptions, and (iv) in the five years of allegedly simultaneous use, there is not one instance of actual consumer confusion.

3.     Whether the University's naked licensing resulted in the abandonment of its alleged clothing marks?

4.     Whether a trademark infringement plaintiff must establish as part of its *prima facie* case that there is a likelihood of confusion regarding the origin of the physical goods offered for sale or whether it is enough to merely claim consumer knowledge of the origin of the symbol appearing on the product?

5.     Whether the District Court abused its discretion by excluding evidence submitted for the first time in a summary judgment reply brief footnote as a link to an internet page and that directly contradicted prior factual admissions the University had made and upon which Sportswear had relied?

## STATEMENT OF THE CASE

### I.    Nature of the Case and Disposition Below

In July 2014 Plaintiff-Appellant Savannah College of Art and Design, Inc. (the "University") sued Defendant-Appellee Sportswear, Inc. ("Prep Sportswear") alleging four causes of action as to four different marks. (Doc. 1). The four claims were federal trademark infringement (15 U.S.C. § 1114), false designation of origin (15 U.S.C. § 1125), counterfeiting (15 U.S.C. § 1116) and state law unfair competition (O.C.G.A. § 10-1-372). The four Alleged Marks were:

| The Bee Design Mark | The Shield Design Mark | The SCAD Text Mark | The Full Name Text Mark |
|---|---|---|---|
|  |  | **SCAD** | **Savannah College of Art and Design** |

In its Complaint, the University alleged that it had used these four marks "on apparel for many years" and that therefore it had "common law rights in these marks in connection with apparel and related goods." (Doc. 1 ¶ 19). Prep Sportswear moved to dismiss the University's counterfeiting claim (Doc. 10), and the District Court granted that motion without opposition from the University. (Doc. 24). Discovery proceeded on the remaining three claims. The University came forward with no evidence of when it first used the four marks in connection

with the sale of clothing, no survey evidence, no evidence of any actual consumer confusion as to the source of Prep Sportswear's goods, and no evidence of recognition of the four marks or consumer expectations of association.

At the conclusion of discovery, the parties filed cross motions for summary judgment. (Doc. 39 and 40). Oppositions and reply briefs followed. (Doc. 46-49). Because the University cited new information in its reply brief, Prep Sportswear moved to strike that "evidence." (Doc. 50). On August 3, 2015, the District Court granted Prep Sportswear's summary judgment motion and denied the University's, at the same time suppressing in part the new "evidence." (Doc. 53). The District Court held that the University had failed to present admissible evidence that it had enforceable trademark rights for clothing. (Doc. 53, p. 7). The District Court awarded Prep Sportswear its costs. (Doc. 54). Prep Sportswear filed a Motion for Attorneys' Fees as an "exceptional" case (Doc. 56 and 56-1), which has been stayed pending this appeal. (Doc. 70). The University timely filed a notice of appeal. (Doc. 58).

## II.    Statement of Facts

### A.    The University

The University was founded in 1978 and its primary business is providing educational services. It owns four federal trademark registrations — one each for the Bee Design Mark, the Shield Design Mark, the SCAD Text Mark and the Full

Name Text Mark  — for use in connection with those educational services. (the "Alleged Marks") (Doc. 46-1 ¶¶ 2-6, 8-10, 12-19). It does not own any state or federal trademark registrations for use of the four marks in connection with the sale of clothing or headwear. (Doc. 46-1 ¶¶ 3, 6, 10, 16, 19).

The University has produced no evidence: (i) showing the list of products on which the Alleged Marks have been printed (Doc. 39-21 at 15:4-7; Doc. 39-6 at 13:22-14:3) or (ii) establishing when each of the Alleged Marks were first used in connection with the sale of apparel or related goods (Doc. 46-1 ¶ 24; Doc. 39-6 at 14:15-15:2; Doc. 39-21 at 15:23-16:22). The University conducted no survey concerning the recognition of the four marks in connection with clothing and no survey to determine the likelihood of confusion. (Doc. 46-1 ¶ 36). The University produced no evidence showing the specific dollar amount (or unit amount) of annual sales by it or its licensee, Follett, of apparel bearing the Alleged Marks. (Doc. 46-1 ¶ 31). Nor did it produce evidence showing the date on which Follett first began selling clothing bearing each Alleged Mark. (Doc. 46-1 ¶ 33; Doc. 39-6 14:15-15:2).

There is no evidence that Follett has spent any money advertising or promoting the Alleged Marks in connection with the sale of clothing or headwear. (Doc. 46-1 ¶ 35; Doc. 39-6 at 21:8-22:11; Doc. 39-21 at 19:8-14).

### B.    Prep Sportswear

Prep Sportswear is an internet-based business that sells customizable sports team apparel and fan clothing in relatively small batches for colleges, high schools, junior high schools, elementary schools, youth sports teams, church sports teams, Greek and military organizations, golf courses, vintage sports teams, popular destinations, and municipal organizations all over the nation. (Doc. 46-1 ¶¶ 44-45).

Prep Sportswear's website allows visitors to design clothing and other goods bearing the name of the school, team, or organization with which they wish to express their affiliation. (Doc. 46-1 ¶ 46; Doc. 42-1 ¶ 4). For example, a customer visiting Prep Sportswear's website to purchase a t-shirt is able to choose the school name she wants on that t-shirt and then choose the color of clothing, the color of the font being used, the exact name and/or phrases she wants on the t-shirt and the font design. (Doc. 46-1 ¶ 47; Doc. 42-1 ¶ 5). All products appearing on the Prep Sportswear website are dynamic, meaning that a consumer must individually select the school store, then a product, then a color, then a design, and then a size in order to dynamically create a product. (Doc. 47-2 ¶ 8).

The merchandise so produced displays the name or initials in large font on the front of the t-shirt, communicating the customer's affiliation with the school to others. (Doc. 46-1 ¶ 48; Doc. 42-1 ¶ 6). Once a customer has designed the t-shirt or other item that he or she wants and places an order, Prep Sportswear creates the

final product to the customer's specifications at its facility in Louisville, Kentucky using the material quality that the customer has ordered. (Doc. 47-2 ¶ 9). The products typically ship in three business days. (Doc. 46-1 ¶ 49; Doc. 42-1¶ 7).

The source of the physical product on which the school name is printed (e.g., Hanes, Champion, Fruit of the Loom, Russell, etc.) is identified on Prep Sportswear's website itself as well as on the tag of the physical product. (Doc. 46-1 ¶ 50). When an item of apparel is shipped to a customer, the entire ordering process and the packaging clearly indicates that the product is from Prep Sportswear. (Doc. 46-1 ¶ 51; Doc. 42-1 ¶ 9).

Prep Sportswear began selling goods printed with the name "Savannah College of Art and Design" and/or the initials "SCAD" in August 2009 through its website www.prepsportswear.com. (Doc. 46-1 ¶¶ 53-54; Doc. 42-1 ¶¶ 11-12). Neither Prep Sportswear's website, its advertising material, nor any of its packaging material have ever indicated in any way that customer-designed products bearing the name "Savannah College of Art and Design" or SCAD initials are Plaintiff's "official" products or that any of these products are somehow sponsored or endorsed by Plaintiff. (Doc. 46-1 ¶ 56; Doc. 42-1 ¶ 17). In fact, the site contains prominent disclaimers stating that the clothing products are not sponsored or endorsed by or affiliated with the University and that all products are

7

exclusively produced and fulfilled by Prep Sportswear. (Doc. 46-1 ¶ 57; Doc. 42-1 ¶ 18)

The only way that Prep Sportswear would have printed and sold a product bearing the terms SCAD or Savannah College of Art and Design is if a customer has chosen to apply those terms to the physical article being ordered. (Doc. 46-1 ¶ 49-50).

The terms are not printed on physical products as trademarks, such as on a neck label or a hang tag, but rather they are chosen by Prep Sportswear's customers to ornament the clothing and show the customer's affiliation with the University. (Doc. 46-1 ¶¶ 46-48). Prep Sportswear has never maintained an inventory of goods bearing SCAD or Savannah College of Art and Design. (Doc. 42-1 ¶ 21).

Prep Sportswear has never printed or displayed the Bee Design Mark or the Shield Design Mark as they appear on the University's registrations. (Doc. 46-1 ¶¶ 7, 11). There has never been a single instance where a customer was confused between Prep Sportswear and the University. (Doc. 46-1 ¶ 58; Doc. 42-1 ¶ 19). At least three outside parties also sell clothing decorated with one or more of the SCAD Marks. (Doc. 46-1 ¶ 59; Doc. 42-1 ¶ 20).

### III.    Standard and Scope Of Review

A district court's grant or denial of a summary judgment motion is reviewed *de novo*. *Capone v. Aetna Life Ins. Co.*, 592 F.3d 1189, 1194 (11th Cir. 2010). The grant or denial of a motion to exclude evidence is reviewed for an abuse of discretion. *Goodman-Gable-Gould Co. v. Tiara Condo. Ass'n*, 595 F.3d 1203, 1210 (11th Cir. 2010).

## SUMMARY OF THE ARGUMENT

This Court should affirm the District Court's grant of summary judgment to Prep Sportswear. *First*, the District Court properly held that the University could not prevail on any of its claims unless it had established ownership of one or more valid clothing trademarks. The Court properly found that the University had failed to make that showing, a point the University appears to concede. *Second*, even if the University had cleared the ownership hurdle, it also failed to come forward with sufficient evidence that would allow a reasonable jury to find that a likelihood of confusion existed. This is a second independent basis on which to affirm the District Court. *Third*, even if the University could establish initial clothing mark ownership, the undisputed evidence showed that it had abandoned such rights through the practice of naked licensing. *Fourth*, the University's primary argument that it is not required to prove ownership of a valid mark or a likelihood of consumer confusion as to origin, rests on a claim for merchandising rights, a concept that is contrary to blackletter trademark law and that would effectively turn the University's educational service marks into perpetual copyrights. *Finally*, the District Court properly rejected the University's attempt to rely on new "evidence" in a reply brief where the "evidence" contradicted prior admissions it had made.

10

## ARGUMENT AND CITATIONS OF AUTHORITY

### I.    The University Failed to Establish Trademark Rights as to Clothing

Like in any civil litigation, a plaintiff must show that it has a right and that right has been abridged. In a trademark infringement context, a plaintiff must first establish trademark ownership either via (a) a registration or (b) common law rights through use. Once a plaintiff shows ownership of a valid mark for the goods or services at issue, it still must establish infringement of the mark. As the University has not established it has a registration for the Alleged Marks, nor has it proved it has a common law right in the Alleged Marks, it cannot establish infringement.

### A.    The University Does Not Have Registrations for the Alleged Marks as to Clothing

Trademark rights exist only in relation to designations of a particular product or service – they are not "rights in gross," and they do not confer a general right to prohibit the use of a particular word or words by others on all goods or services. *Prestonettes, Inc. v. Coty*, 264 U.S. 359, 368 (1924). Instead, trademark protection extends only to protect a trademark owner against the use of a confusingly similar designation on a similar good or service; for goods and services outside of that scope, there is no trademark protection. *Brown Bark II, L.P. v. Dixie Mills, LLC*, 732 F. Supp. 2d 1353, 1358 (N.D. Ga. 2010) (Thrash J.) (finding plaintiff had no trademark infringement claim because use with one product did not give rights to a

11

mark vis-à-vis another product). For this reason, trademark registration applicants are required to designate specifically "for what goods the design is a trademark to avoid treating a trademark as a right in gross." *In re DC Comics, Inc.*, 689 F.2d 1042, 1051 n. 1 (C.C.P.A. 1982) (Nies, J. concurring).

The University owns no state or federal trademark registration for use of the Alleged Marks in connection with the sale of apparel. (Doc. 46-1 ¶¶ 6, 10, 16, 19, 25). As the University has no registration for the Alleged Marks in connection with apparel, it must establish common law rights on apparel through use as a mark.

**B.    The University Did Not Come Forward with Evidence to Support a Finding that it Owned Common Law Clothing Trademarks**

Common law trademark rights are established by <u>use</u>. To prevail, the University must establish that it has acquired trademark rights by using the Alleged Marks in connection with the sale of apparel. "To acquire ownership of a trademark, one must actually use the designation as a mark in the sale of goods or services. No trademark rights accrue to someone who merely selects a designation without actual use of it in the advertising or sale of goods." 2 J. T. McCarthy, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 16:11 (4th ed. 2015).

The University has woefully failed to produce evidence to establish the required use as a clothing trademark. The University does not manufacture or sell clothing. (Doc. 46-1 ¶ 25; Flower 10:10-15, 38:2-19; Smith 16:2-9; Axel Decl. Ex. 21 (Response Nos. 9-11)). Through the end of discovery, the University had

produced no evidence: (i) showing a list of apparel on which the Alleged Marks have been printed (Flower 15:4-7; Smith 13:22-14:3) or (ii) establishing when each alleged mark was first used in connection with the sale of apparel or related goods (Doc. 46-1 ¶ 24; Smith 14:15-15:2; Flower 15:23-16:22; Axel Decl. Ex. 6 and 16) The University <u>admits</u> that it does not advertise or promote the Alleged Marks in connection with the sale of apparel. (Doc. 46-1 ¶ 34; Flower 20:2-5; Axel Decl. Ex. 19 (Response No. 11)). It further failed to show it used any of the Alleged Marks as trademarks in connection with the sale of clothing before August 2009 (when Prep Sportswear began selling goods printed with the name "Savannah College of Art and Design" and/or the initials "SCAD" – Doc. 46-1 ¶¶ 53-54; Hartvigson Decl. ¶¶ 11-12).

Without evidence of use on apparel, the University cannot show ownership (and failed to show ownership on summary judgment). *Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1195 (11th Cir. 2001) ("use of a mark in commerce also must be sufficient to establish *ownership rights* for a plaintiff to recover against subsequent users under section 43(a)").

Despite this lack of proof, the University has alleged throughout this litigation that it owns common law trademark rights in the Alleged Marks for use in connection with "apparel and related goods." (Doc. 1 ¶ 19). However, on page 9 of the University's brief, the University falsely informs this Court that it did not

base this case on common law trademark use. "[The University] did not base its case on the date on which it first began selling apparel bearing its trademarks. . . [The University] admits that it did not submit evidence of the first use of its trademarks on apparel." (Appellant's Br. at 9). There are no record cites for these false statements. The Complaint alleges common law rights - i.e. "use of these marks . . . on apparel for many years." (Doc. 1 ¶¶ 1-49, ¶¶ 50-55, ¶¶ 68-73). What the University is telling the Court at the top of page 9 is false and unhelpful.

The University has failed to establish rights in the Alleged Marks with respect to clothing, and this failure is a fatal flaw, dooming all of its claims. *Epic Metals Corp. v. Soulier*, 99 F.3d 1034, 1038-39 (11th Cir. 1996). It is partly for this reason that the District Court found for Prep Sportswear on summary judgment and against the University. (Doc. 53 p. 8).

## II.    The University's Effort to Distinguish *Crystal Entertainment* is Unavailing

In this appeal the University raises for the first time the argument that "case law relating to priority disputes" a/k/a "joint endeavor rights" does not apply to the facts of this case because "Sportswear has no trademark rights at issue." (Appellant's Br. at 22-26). The Court is not required to consider arguments not raised before the District Court. *Bryant v. Jones*, 575 F.3d 1281, 1296 (11th Cir. 2009). Here the "priority dispute" argument was not advanced before the District Court by the University. For this reason at least, the Court should affirm.

14

If the Court is inclined to examine the issue, still, because the University wholly failed to establish ownership of trademark rights in clothing goods, summary judgment should be affirmed.

In arguing against "priority dispute cases," the University does not take issue with the District Court's finding that the University "has no evidence of when any of the marks were first used in connection with the sale of apparel or related goods." (Doc. 53, pp. 2-3). Rather, the University takes issue with the District Court's citation of *Crystal Entertainment & Filmworks, Inc. v. Jurado*, 643 F.3d 1313, 1320-21 (11th Cir. 2011). But the District Court cited *Crystal Entertainment* for the following propositions: (i) that a plaintiff must first show enforceable rights in a mark and then defendant's unauthorized use of a mark in a manner likely to cause confusion (Doc. 53 pp. 3-4); (ii) that common law rights are appropriated only through actual prior use in commerce (*Id*. p. 5); and (iii) that because the University does not own registered marks for apparel, it must prove "that it used the marks in commerce prior to Defendant's use." (*Id*. pp. 5-6, also citing 15 U.S.C. § 1115(a)). None of these principles of law are remotely controversial.

The University refers to "case law relating to priority disputes" (Appellant's Br. at 22), but there is no such category. The Lanham Act and every trademark infringement case in this Circuit requires a plaintiff to first show enforceable rights in a mark. 15 U.S.C. § 1115(a). The District Court correctly found that the

15

University failed entirely to present any admissible evidence showing that it has enforceable rights in any mark related to apparel. (Doc. 53 p. 7). The University did not prove <u>prior</u> use of the marks according to the District Court and the University failed to prove <u>any</u> use of the marks on apparel. (*Id.*).

The University claims that "priority case law" does not apply, but even in this protest the University's claims are undermined by its own Complaint. For example, the University states that "the flaw with the District Court's analysis is that it erroneously approaches the case as if Sportswear and SCAD were competing companies that had chosen similar brand names for the same or a similar product." (Appellant's Br. at 23). Where would the District Court get such an idea? Perhaps Plaintiff's Complaint, which alleges that Sportswear's goods and services "are directly competitive with or related to SCAD's goods and services . . . " (Doc. 1 ¶ 35) and, "Sportswear's unauthorized use of the SCAD marks . . . is intended to, and will, directly compete with the lawful . . . activities of SCAD . . ." (Doc. 1 ¶ 36). Even in later sections of its brief, the University alleges competing products and competing customers, channels of trade and marketing channels. (Appellant's Br. at 35).

Finally, the University attempts to distinguish *Crystal Entertainment* as a case where both parties used a mark as a trademark. (Appellant's Br. at 24). The University states that because Prep Sportswear claims it is not using the terms as

16

trademarks to designate the source of Sportswear's goods, the question of priority of trademark rights should not apply. (Appellant's Br. at 23). But the University cannot have it both ways: either Prep Sportswear has not used the terms as trademarks and thus priority is not an issue and Prep Sportswear cannot be held to infringe; or Prep Sportswear has used the terms as trademarks and has proven prior use of the terms on apparel and Prep Sportswear cannot be held to infringe.

The University makes no credible argument for distinguishing *Crystal Entertainment*, and does not contest the District Court's finding that the University failed to establish ownership of marks used with apparel.

**III.    Even if the University Had Established Ownership of Common Law Clothing Marks, It Still Failed to Present Sufficient Evidence of a Likelihood of Confusion**

This Court may also affirm the grant of summary judgment on a different ground than the District Court. *Colsa Corp. v. Martin Marietta Servs., Inc.*, 133 F.3d 853, 855 n. 5 (11th Cir. 1998). While the District Court granted summary judgment based upon the University's failure to establish ownership, summary judgment was also appropriate based on the University's failure to present evidence that would have allowed a reasonable fact finder to conclude that there

was a likelihood of consumer confusion regarding the origin of Prep Sportswear's clothing products.[1]

The "touchstone of liability in a trademark infringement action is not simply whether there is unauthorized use of a protected mark, but whether such use is likely to cause consumer confusion." *Custom Mfg. & Eng'g, Inc. v. Midway Servs., Inc.*, 508 F.3d 641, 647 (11th Cir. 2007). Seven factors determine whether a likelihood of confusion exists:

1) the strength of the allegedly infringed mark;

2) the similarity between the allegedly infringed and infringing marks;

3) the similarity between the goods/services offered under the marks;

4) the similarity of the sales methods used by the parties;

5) the similarity of advertising methods used by the parties;

6) the defendant's intent; and

7) the existence and extent of any actual consumer confusion.

*Tana v. Dantanna's*, 611 F.3d 767, 774-75 (11th Cir. 2010). Of these seven, the first (mark strength) and last (evidence of actual confusion) are the most significant. *Caliber Auto. Liquidators*, 605 F.3d at 939. In this case, six of the seven factors — including the two most important factors — weighed against a

---

[1] Likelihood of confusion is a fact issue. *Caliber Auto. Liquidators, Inc. v. Premier Chrysler, Jeep, Dodge, LLC*, 605 F.3d 931, 941 (11th Cir. 2010). But where the material facts are not disputed, the issue is an appropriate one for summary judgment. *Tana v. Dantanna's*, 611 F.3d 767 (11th Cir. 2010).

likelihood of confusion. Therefore, had the District Court reached the issue, it would have granted summary judgment to Prep Sportswear based on this prong as well.

### A.    Mark Strength

With respect to the University's *educational services*, Prep Sportswear does not dispute that the two <u>design</u> marks associated with educational services have strength. But that does not mean the two marks are strong (or even exist) <u>with respect to clothing goods</u>. Moreover, Prep Sportswear has never displayed or printed either of those two design marks (Doc. 39-2 ¶¶ 7 and 11; Doc. 42-1 ¶¶ 14 and 16); therefore, whether the two design marks are strong or not is irrelevant.

Plaintiff's two <u>text</u> marks for educational services are weak. The term "Savannah College of Art and Design" combines a geographically descriptive term "Savannah" with a generic term "College of Art and Design." As such, the Full Name Text Mark is a geographically descriptive term and is only entitled to protection as a trademark or service mark to the extent it has acquired secondary meaning. *Atlanta Allergy & Asthma Clinic P.A. v. Allergy & Asthma of Atlanta, LLC*, 685 F. Supp. 2d 1360, 1367 (N.D. Ga. 2010); see also Doc. 39-1 pp. 17-18. And, because SCAD is the acronym for "Savannah College of Art and Design," it too is descriptive. *Welding Servs. Inc. v. Forman* , 509 F.3d 1351, 1359 (11th Cir.

2007). Thus, even if the two text marks are presumptively valid (for educational services), they are still weak marks for such services.

Moreover, as to clothing goods, there is no evidence (consumer surveys or other) that the terms have acquired secondary meaning. There _is_ undisputed evidence that other apparel manufacturers apply the same terms to clothing (Doc. 42-1 ¶ 20), an additional indicator of weakness. *HBP, Inc. v. Am. Marine Holdings, Inc.*, 290 F. Supp. 2d 1320, 1329 (M.D. Fla. 2003), *aff'd*, 129 F. App'x 601 (11th Cir. 2005). As to clothing, the marks are weak.

### B.    Similarity of Marks

Again, because Prep Sportswear has never displayed or printed the two design marks (Doc. 39-2 ¶¶ 7, 11; Doc. 42-1 ¶¶ 14, 16), this factor weighs overwhelmingly against a finding of confusion as to those two marks. As to the two text service marks, Prep Sportswear has applied the terms to clothing, but it has not done so in a manner that indicates source. Rather, these terms are functional features, showing affiliation between the wearer and the University. That is not trademark use, and it does not support a finding of confusion.

> The fact that purchasers purchased Rainbow jewelry as a direct result of the presence of the Rainbow emblem does not compel the conclusion that they did so believing that the jewelry was in any way endorsed, sponsored, approved or otherwise associated with Rainbow, given the court's findings. The evidence supported the conclusion that they purchased the items bearing the Rainbow mark for the value of items bearing the Rainbow mark themselves, *to show membership and status within the organization, and not because of any confusion,*

> *mistake or deceit as to the association of the items themselves with*
> *Rainbow as a result of the presence of the mark.*

*Supreme Assembly, Order of Rainbow for Girls v. J. H. Ray Jewelry Co.*, 676 F.2d

1079, 1084 (5th Cir. 1982) (emphasis added); *De La Salle High School of Concord*

*v. Sportswear, Inc.*, Case No. C11-00182 (Cal. S.Ct. Oct. 22, 2012) (unpublished

opnion) (granting summary judgment to Prep Sportswear because terms "De La

Salle" and "DLS" were not used on the clothing as trademarks) (Doc. 47-2 pp. 5-

10). Thus, to say the marks are *similar* is to miss the point, which is that Prep

Sportswear is not using the terms as clothing trademarks at all. There can be no

similarity of marks when there are not two "marks" (i.e. terms used in commerce

as trademarks) to compare. 14 U.S.C. § 1114(1).

### C.    Similarity of Goods/Services

As the University acknowledges, its educational services and Prep

Sportswear's apparel are not competitive products or services. (Doc. 4-1 ¶ 19).

Prep Sportswear does not provide educational services (Doc. 42-1 ¶ 10), and the

University does not manufacture or sell clothing (Doc. 39-2 ¶ 25). Nor has the

University offered any evidence that would support the conclusion that educational

services and clothing are somehow "related goods" (i.e. goods that consumers

would naturally originate from a single producer). "Related goods are those that a

consumer is likely to believe come from the same source and are somehow

connected with a common company." *Tally-Ho, Inc. v. Coast Cmty. Coll. Dist.*, 889 F.2d 1018, 1027 (11th Cir. 1989).[2]

Because the University admits that clothing goods and educational services are not competitive, and tacitly acknowledges they are not related, it cannot succeed on a claim for infringement. When goods and services are neither competitive nor related, the only Lanham Act claim that remains available to a plaintiff is anti-dilution. But the University has not alleged an anti-dilution claim, nor could it succeed on such a claim if pleaded, because dilution requires proof that the allegedly diluted mark is nationally famous (which these are not). 15 U.S.C. § 1125(c). The similarity of goods factor weighs heavily against a finding of a likelihood of confusion.

### D.    Sales Methods

A customer visiting Prep Sportswear's website ***chooses all of the features of the clothing item***: the color, the source of the physical article (e.g. Champion, Hanes, etc.), and the designs and text that Prep Sportswear should print on the item. In each case, the product that the customer is buying is intended to express his or her (or a third party's) affiliation with some school or organization. This means that the only time "SCAD" or "Savannah College of Art and Design" is

---

[2] The University has never argued that clothing and educational services are related goods. The Court is not required to consider arguments not raised before the District Court. *Bryant v. Jones*, 575 F.3d 1281, 1296 (11th Cir. 2009).

ever printed on a physical product is when a customer decides that he or she wants those terms applied. There is simply no way a customer would believe that a shirt's "origin" somehow changes depending on whether the customer decides to apply the term "SCAD," the phrase "Savannah Bees," or some other term to show his or her support.

Moreover, even if there were some remote possibility of confusion, it is further reduced by Prep Sportswear's public written disclosures about source: "*All products in this store are exclusively produced and fulfilled by Prep Sportswear*." (Doc. 42-1 ¶ 18). To be doubly sure that the customer does not think Prep Sportswear and the University are connected, the webpages also state "*This store is not sponsored or endorsed by Savannah College of Art and Design*." (*Id*.). In short, there is nothing that Prep Sportswear does to confuse customers about the source of the physical products they buy.

Moreover, there is no reason to believe (as there is no evidence) that customers view Prep Sportswear's website with any preconception that the source of the goods on the Prep Sportswear website is the University. The University has not established any long-term presence as the sole source of soft goods bearing the terms SCAD or Savannah College of Art and Design. Indeed, all of its evidence of sales — which is scant — comes from 2011 or later. And there is evidence of substantial third-party use of the marks printed on clothing. (Doc. 39-2 ¶ 59).

Given these facts, and given that Prep Sportswear discloses that it is not selling clothes endorsed or sponsored by the University, there is no possibility of customer confusion. *See*, *e.g.*, *Supreme Assembly, Order of Rainbow for Girls*, 676 F.2d at 1083 (finding no likelihood of confusion when there was no history of products bearing mark being manufactured by just one source or that the official producer was advertised as such). This factor leans overwhelmingly against a finding of a likelihood of confusion.

### E.    Advertising Methods – The University Does Not Advertise

The University's argument regarding the advertising factor is both factually and legally unfounded. In a nutshell, the University offers a comparison chart of certain clothing items — allegedly offered by the Parties — that are advertised online and that look alike. (Doc. 40-1 p. 20). Factually, there is no evidence in the record regarding <u>when</u> the University (or Follett) began selling clothing bearing the marks — the University could have offered these clothes in 2015, well after Prep Sportswear began selling in 2009. While the University's sports teams may wear jerseys bearing the term SCAD, this is not use as a trademark, and the source of those jerseys is not identified in the University's supporting papers. Moreover, "[t]hat the goods or services of the parties are both found on the Internet proves little, if anything, about the likelihood that consumers will confuse similar marks used on such goods or services." 4 J. T. McCarthy, MCCARTHY ON TRADEMARKS

AND UNFAIR COMPETITION § 24:53.50 (4th ed. 2015); *Parfums de Coeur, Ltd. v. Lory Lazarus*, 83 U.S.P.Q.2d 1012, 2007 WL 683784 *10 (TTAB Feb. 27, 2007) ("The Internet is such a pervasive medium that virtually everything is advertised and sold through the Internet. We therefore need something more than this general fact . . . ").

### F.     Intent to Confuse

The University conflates the intent to print with the intent to confuse the public; but they are fundamentally different concepts. Prep Sportswear intended to sell clothes branded with a Hanes or Nike label that were also decorated by the term SCAD, but there is no evidence that it intended to confuse consumers as to the source of the clothing items that they were buying. Indeed, all of the evidence shows that Prep Sportswear was not trying to confuse consumers as to source. The intent element of the confusion analysis deals with the intent to confuse, not the intent to copy. "[A] defendant's mere intent to copy, without more, is not sufficiently probative of the defendant's *success* in causing confusion to weigh such a finding in the plaintiff's favor; rather, defendant's intent will indicate a likelihood of confusion only if an intent to *confuse* consumers is demonstrated." *Brooks Shoe Mfg. Co. v. Suave Shoe Corp.*, 716 F.2d 854, 859-60 (11th Cir. 1983); *See also*, *Univ. of Alabama Bd. of Trustees v. New Life Art, Inc.*, 683 F.3d 1266, 1279 (11th Cir. 2012) ("there is no evidence that [defendant] ever marketed an

unlicensed item as "endorsed" or "sponsored" by the University, or otherwise explicitly stated that such items were affiliated with the University"); *A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc*., 237 F.3d 198, 225-26 (3d Cir. 2000); *Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 588 F.3d 97, 117 (2d Cir. 2009) ("There is a considerable difference between an intent to copy and an intent to deceive") (quoting McCarthy § 23:113).

Nevertheless, the University seems to argue that the intent element weighs in its favor because Prep Sportswear allegedly intends to capitalize on the popularity of the school. (Doc. 40-1 at 22). But the intent to follow a trend or to profit from the popularity of a product or institution does not mean there was an intent to confuse as to the origin or source of a product. *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 33-34 (2003); *Am. Footwear Corp. v. Gen. Footwear Co.*, 609 F.2d 655, 662 (2d Cir. 1979). Moreover, as the *De La Salle* Court held, Prep Sportswear is not using the term DLS (or the term SCAD) as a source identifier. If one is not using a term as a source identifier then it is impossible that such use could be evidence of an intent to deceive as to source.

### G.    Actual Confusion

Actual confusion is the strongest evidence supporting a finding of likelihood of confusion. *Caliber Auto. Liquidators*, 605 F.3d at 936; *Frehling Enters., Inc. v. Int'l Select Grp., Inc.*, 192 F.3d 1330, 1340 (11th Cir. 1999). Here, SCAD admitted

in its briefing below "that it does not have evidence that a consumer bought SCAD apparel from the Defendant thinking that they were buying from SCAD" (Doc. 40-1 p. 23). Indeed, in the five years (2009-2014) that Prep Sportswear sold clothing printed with the terms "SCAD" or "Savannah College of Art and Design" there has not been a single instance of actual customer confusion.[3] (Doc. 39-2, ¶ 58).

And while actual confusion is not a prerequisite for a finding of likelihood of confusion, where there are no instances of actual confusion over a long period of concurrent use, that weighs against a likelihood of confusion. *Amstar Corp. v. Domino's Pizza, Inc.*, 615 F.2d 252, 263 (5th Cir. 1980) (15 years of concurrent sales with only 3 instances of actual confusion "raises a presumption against likelihood of confusion in the future"); *CareFirst of Maryland, Inc. v. First Care, P.C.*, 434 F.3d 263, 269 (4th Cir. 2006) (9 years of coexistence without actual confusion "creates a strong inference that there is no likelihood of confusion"); *Oreck Corp. v. U.S. Floor Systems, Inc.*, 803 F.2d 166, 173 (5th Cir. 1986) (17 months of concurrent use with no confusion suggested no likelihood of confusion).

Finally, survey evidence is also considered evidence of actual confusion. *Callaway Golf Co. v. Golf Clean, Inc.*, 915 F. Supp. 1206, 1214 (M.D. Fla. 1995). But the University conducted no such survey. (Doc. 39-2, ¶ 36).

---

[3] On appeal the University says that it has "brought forth evidence of actual confusion" (Appellant's Br. at 38) but the document cited (Doc. No. 45-11) does not show confusion but only that a University employee discovered Prep Sportswear's website.

### H.    Sufficient Likelihood of Confusion Evidence was Not Presented

In sum, the University never developed facts that would support a finding of likelihood of confusion under this Circuit's well-established standard. Instead, all of its arguments rest on the existence of a merchandising right. *See* § IV *infra*. The same position was rejected in *Board of Governors of the University of North Carolina v. Helpingstine*, 714 F. Supp. 167 (M.D.N.C. 1989) ("*Helpingstine*"), where the University of North Carolina sued a t-shirt manufacturer for infringing four registered marks – two design marks and two text marks for "UNC" and "University of North Carolina." UNC moved for summary judgment, making essentially the same argument that the University does here. But the *Helpingstine* Court denied UNC's summary judgment motion because there were genuine issues of fact as to whether a T-shirt bearing "UNC" or "University of North Carolina" caused consumer confusion.

> Given that there is a distinct possibility that individuals who buy products from [defendant] do not base their decision upon whether the product is sponsored or endorsed by UNC-CH and that Plaintiffs bear the burden of establishing likelihood of confusion, the court holds that UNC-CH must meet its burden of showing more than simply the identity of the marks. ***Instead, it must provide evidence establishing the individuals do make the distinction as to sponsorship or endorsement, or direct evidence of actual confusion***.

*Helpingstine*, 714 F. Supp. at 173 (emphasis added). Here, the University never took those next steps of providing evidence that individuals make distinctions as to

sponsorship and never presented evidence of actual confusion. Therefore, it cannot prevail on any of its claims.[4]

## IV.    The University Abandoned Any Trademark Rights it Owned For Clothing By Its Naked Licensing

The District Court did not get to the question of abandonment of trademark rights by the University, but the evidence of record shows that for this additional reason Sportswear's Motion for Summary Judgment was properly granted. The University abandoned any trademark rights that it may have had in connection with clothing goods through its naked licensing of marks to Follett for use on clothing. Naked licensing is "[u]ncontrolled licensing of a mark whereby the licensee can place the mark on any quality or type of goods or services..." 2 McCarthy, § 18:48; see also, RESTATEMENT (THIRD) UNFAIR COMPETITION § 33 cmt. b (1995); *Go Med. Indus. Pty, Ltd. v. Inmed Corp.*, 300 F. Supp. 2d 1297, 1315 (N.D. Ga. 2003) ("A license is naked, resulting in trademark abandonment, when there is insufficient control retained by the trademark owner to ensure the quality of production . . . "), *vacated in part on different grounds*, 471 F.3d 1264 (Fed. Cir. 2006). Failing to monitor the quality of a licensee's products results in a complete loss of rights in the mark. *Kentucky Fried Chicken Corp. v. Diversified Packaging*

---

[4] The elements of a GUDTPA claim are the same as those for a Lanham Act infringement claim. *Energy Four, Inc. v. Dornier Med. Sys., Inc.*, 765 F. Supp. 724, 731 (N.D. Ga. 1991); *Optimum Techs., Inc. v. Henkel Consumer Adhesives, Inc.*, 496 F.3d 1231, 1248 n. 11 (11th Cir. 2007). Therefore, to the extent the University's Section 32 and Section 43 claims fail, so do its GUDPTA claims.

*Corp.*, 549 F.2d 368, 387 (5th Cir. 1977); *CNA Fin. Corp. v. Brown*, 922 F. Supp. 567, 574 (M.D. Fla. 1996) (where parent corporation licensed mark to subsidiary without quality control, mark owner was held to "lack[] the requisite control over the services connected with its marks and therefore forfeit[ed] its rights in the mark."), *aff'd in relevant part*, 162 F. 3d 1334 (11th Cir. 1998).

While abandonment through naked licensing will not be lightly found, the evidence submitted below warrants its application. The University exercised absolutely no control over the quality of the clothing products to which Follett applied the Alleged Marks. (Doc. 39-21 at 15:4-22, 20:24-23:12; Doc. 39-6 at 7:3-9, 13:22-14:3, 41:17-23). The University submitted evidence that it approved the marks/designs printed on the clothing, but offered no evidence that it controlled the quality of the clothing goods themselves. Indeed, Follett made the final decision regarding not only the quality of all products but even regarding to which products it would apply the marks; the University did nothing more than receive a royalty. *Id*. This is quintessential naked licensing, and the result is abandonment of the University's marks for use in association with clothing.[5] For this additional reason,

---

[5] The University also expressly abandoned the Bee Design Mark shown in '493 Registration, when in 2011 it stopped using the Bee Design Mark in connection with apparel and issued internal instructions to cease use in association with apparel. (Doc. 46-1 ¶ 26; Doc. 39-21 at 13:6-14; Doc. 39-9). *See*, *e.g.*, *Citibank, N.A. v. Citibanc Group, Inc.*, 724 F.2d 1540, 1545 (11th Cir. 1984) (cessation of use plus intent to abandon future use meets the requirements for finding of abandonment of a mark.)

Sportswear's Motion for Summary Judgment was properly granted and should be affirmed.

## V.    The University Does Not Have a "Merchandising Right"

As alluded to above, the University disclaims any need to propound a traditional trademark infringement claim. In its brief to this Court, the University insists that it does not need to establish use of its trademarks on apparel. (Appellant's Br. at 12). The University's argument ultimately rests on the Fifth Circuit's forty-year old opinion in *Boston Professional Hockey Association v. Dallas Cap & Emblem Manufacturing, Inc.*, 510 F.2d 1004 (5th Cir. 1975) ("*Boston Hockey*"), cited approvingly by this Court in *University of Georgia Athletic Association v. Laite*, 756 F.2d 1535 (11th Cir. 1985) ("*Laite*"):

> this court's predecessor held that "confusion" need not relate to the origin of the challenged *product.* Rather, "confusion" may relate to the public's knowledge that the *trademark,* which is "the triggering mechanism" for the sale of the product, originates with the plaintiff.

756 F.2d at 1546 (quoting *Boston Hockey*, 510 F.2d at 1012). From this passage, the University's argument goes something like this: (1) consumers know that "SCAD" is an acronym for the University; (2) the term "SCAD" is the "triggering mechanism" for the clothing purchase; (3) the defendant printed the term SCAD to make the sale. Thus, there is infringement under *Boston Hockey* and *Laite*.[6]

---

[6] The University predictably tries to place this case as close to *Laite* as possible. But this case differs from *Laite* in several significant ways. First, the court noted

Consumer confusion as to source is either ignored or assumed to flow from No. 1. But there is no support for such a theory within the Lanham Act, Supreme Court case law, or the black letter law from this Circuit.

### A.  Likelihood of Confusion is the *Sine Qua Non* of Infringement

For forty years *Boston Hockey* has been widely criticized as a decision that went too far in separating infringement from a likelihood of consumer confusion. *See*, *e.g.*, 4 J. T. McCarthy, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 24:10 (4th ed. 2015) (describing the case as heretical); Stacey L. Dogan & Mark A. Lemley, *The Merchandising Right: Fragile Theory or Fait Accompli*, 54 EMORY L. J. 461, 475-76 (2005). The most radical interpretation of the case — and the one the University presses here — is that infringement does not require the plaintiff to prove a likelihood of confusion as to source or sponsorship. But that interpretation of *Boston Hockey* does not fit within the fundamental principles of trademark law. The Fifth Circuit recognized this and almost

---

that the bulldog <u>design</u> mark in that case was arbitrary or suggestive and proof of acquired distinctiveness was not needed. Second, there was substantial evidence of actual consumer confusion in *Laite* whereas here there is none. 756 F.2d at 1546 ("We also find in the record persuasive evidence of actual confusion between the two marks"). Third, the beer consumers in *Laite* had no role in applying the accused "mark" to the product at issue whereas here the terms "SCAD" and "Savannah College of Art and Design" never appear on a physical product unless and until a consumer decides to put them there. Fourth, the consumers in *Laite* were not purchasing under circumstances that clearly showed the source of the goods, as are Sportswear's customers.

immediately backpedaled from *Boston Hockey's* errant "triggering mechanism" language.

> Our cases demonstrate unbroken insistence upon likelihood of confusion, and by doing so they reject any notion that a trademark is an owner's "property" to be protected irrespective of its role in the operation of our markets . . . . ***we do not believe* Boston Hockey *equates knowledge of the symbol's source with confusion sufficient to establish trademark infringement.***

*Kentucky Fried Chicken*, 549 F.2d at 388-89 (5th Cir. 1977) (emphasis added).

Since *KFC* was decided before the Fifth Circuit split into the Fifth and Eleventh Circuits, it is binding precedent in this Circuit. *See*, *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1210 (11th Cir. 1981) and *Stein v. Reynolds Sec., Inc.*, 667 F.2d 33, 34 (11th Cir. 1982). In this Circuit, *Laite* does not stand for the heretical proposition advanced by the University.

Similarly, in the thirty years since the *Laite* opinion, the Eleventh Circuit has never relieved plaintiffs of the need to prove a likelihood of consumer confusion in order to prevail on infringement claims, and has consistently demanded that lower courts consider all seven likelihood of confusion factors. *See*, *e.g.*, *Lone Star Steakhouse & Saloon, Inc. v. Longhorn Steaks, Inc.*, 122 F.3d 1379, 1382 (11th Cir. 1997) (plaintiff must show likelihood of confusion to prevail); *Wesco Mfg.,*

*Inc. v. Tropical Attractions of Palm Beach, Inc.*, 833 F.2d 1484, 1488 (11th Cir. 1987) (seven factors must be considered).[7]

### B.    A Merchandising Right Conflicts With the Functionality Doctrine

The University's merchandising right argument is also fundamentally incompatible with the functionality doctrine, which prohibits a functional product feature from receiving trademark protection if the feature "is essential to the use or purpose of the article or if it affects the cost or quality of the article." *Qualitex Co. v. Jacobson Prods. Co.*, 514 U.S. 159, 165 (1995) (citation omitted).[8] The functionality doctrine prohibits trademark protection not only for design features but also for aesthetic features. *TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 33 (2001); *Dippin' Dots, Inc. v. Frosty Bites Distribution, LLC*, 369 F.3d 1197, 1203 n. 7 (11th Cir. 2004) ("the color, shape, and size of dippin' dots [have] 'aesthetic functions' that easily satisfy the competitive necessity test"); *Univ. of Alabama Bd. of Trustees*, 683 F.3d at 1278 ("An artistically expressive use of a trademark will not violate the Lanham Act").

---

[7] Also since the *Laite* opinion is the enactment of the Federal Trademark Dilution Act (1995) which limited the situations in which un-related goods could be held to infringe, and the Trademark Dilution Revision Act of 2006, which eliminated the concept of "niche fame", which the *Laite* Court implicitly relied upon in its discussion of geographically remote bulldog designs.

[8] The entire purpose of fan clothing is to show affiliation between the individual wearing the clothing and a school, team or organization. Thus, the terms SCAD and Savannah College of Art and Design as used on t-shirts are functional under *Qualitex*.

This functionality doctrine would be turned on its head if the University prevailed on its merchandising right theory. Where the functionality doctrine *removes* trademark protection for a source identifier that also serves as a functional product feature, a "merchandising right" would grant a *perpetual monopoly* on a product feature (across many different classes of products) *even if the presence of the feature on the product caused no likelihood of consumer confusion as to origin*.

### C.   The "Confusion" Underlying the Merchandising Theory is not the "Confusion" Required to Support an Infringement Claim

Both *Boston Hockey* and *Laite* state that consumer confusion for Lanham Act infringement claims "need not relate to the origin of the challenged *product*." *Boston Hockey*, 510 F.2d at 1012; *Laite*, 756 F.2d at 1556. But, to the extent that was ever the law of this Circuit,[9] more recent Supreme Court decisions make clear that it is not any longer.

In *Dastar Corp. v. Twentieth Century Fox Film Corp.*, the Supreme Court held that (i) infringement cannot occur without a likelihood of confusion as to origin or sponsorship and (ii) confusion as to origin means origin of the physical product, not origin of the artistic work within the product, which is protected, if at all, by copyright law. 539 U.S. at 37-38; *see also*, *Moseley v. V Secret Catalogue*,

---

[9] More recent cases make clear that the confusion must be as to origin of the goods. *Suntree Tech., Inc. v. Ecosense Int'l, Inc.*, 693 F.3d 1338, 1346 (11th Cir. 2012); *Conagra, Inc. v. Singleton*, 743 F.2d 1508, 1512 (11th Cir. 1984) (infringement claim requires "likelihood of confusion for consumers as to the proper origin of the goods created by the defendant's use").

*Inc.*, 537 U.S. 418, 432-33 (2003) (mental association is not enough to show dilution or confusion). The Supreme Court explained that the phrase 'origin of goods' in the Lanham Act "refers to the producer of the tangible goods that are offered for sale, and not to the author of any idea, concept, or communication embodied in those goods." *Dastar Corp.*, 539 U.S. at 37. Likewise, in *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 117 (2004), the Supreme Court held that infringement always "requires a showing that the defendant's actual practice is likely to produce confusion in the minds of consumers about the origin of the goods or services in question."

The University failed to address any of these Supreme Court cases in its summary judgment briefing before the District Court and it fails to address their import in its opening brief in this appeal as well.

## VI.  The District Court's Partial Granting of the Motion to Strike Was not An Abuse of Discretion

In its Opinion and Order (Doc. 53), the District Court ruled, *inter alia*, on a motion to strike (exclude) "evidence" submitted in/with the University's summary judgment reply brief. The information contained in or with the University's summary judgment reply brief included: a website described in a footnote of the reply brief; a statement from a new declaration; and a second statement from the new declaration. The District Court ordered that the information contained in the website as mentioned in the footnote was to be excluded and that the issue of

excluding statements from the newly submitted declaration was moot (without explaining the basis for such mootness). In particular, the District Court ruled that the information contained in the website as mentioned in the footnote was to be excluded because it was first mentioned in a reply brief and because the information was contrary to the University's discovery responses (thus, the University was estopped). (See, Doc. 53 p. 7). The University appeals the exclusion of the footnote/website information. (Appellant's Br. at 40-44).

In this appeal, the University alleges that the District Court committed legal error by failing to consider "evidence" related to alleged trademark rights merely mentioned in a footnote in a reply brief, despite that the alleged "evidence":

1.    Was not actually submitted to the District Court and is not part of the record;

2.    Was only mentioned (described) in a footnote in a reply brief;

3.    Was not produced in discovery, despite discovery requests covering same;

4.    Is inconsistent with the University's discovery responses (which have not been amended or supplemented); and

5.    Is no longer available at the website mentioned in the footnote.

Under these circumstances, the District Court has committed no error in refusing to consider the University's reference to a website in a footnote in a reply

brief as competent evidence of ownership of a valid trademark. For the reasons more fully set out below, the judgment regarding such "evidence" should be affirmed.

### A.    The Website (also referred to as the Article) Is Not In the Record

As an initial matter, the website "evidence" was not actually submitted to the District Court and <u>is not part of the record in this case</u>. It is important to note that the University seeks to be allowed to rely on some content of the website, in particular some alleged newspaper article that supposedly was published on the website at some time in the past. Indeed, the University's principal appeal brief repeatedly refers to "the article". However, neither the "article" nor a print-out of the contents of the website page was actually submitted to the District Court. Instead, all that the University did was to *mention* the article and the website in its footnote on page 2 of its summary judgment reply brief. (Doc. 49 p. 2 n. 1). The article, if it does exist, has never been submitted to the District Court, has never been served on the undersigned counsel (who has still never seen it), and cannot be found in the official record of this litigation. <u>It is most telling that the University's principal brief includes no record citation to the article or the website content – there can be no proper record citation because these items are not in the record</u>. In essence, the University asks this Court to take the University's word for it as to

what was on the website and in the article at the time summary judgment was entered against the University.

Thus, it appears that the University failed to make a proper record for appeal regarding this alleged "evidence," wholly preventing this Court from granting the University the relief it now seeks. See *Selman v. Cobb Cnty. School Dist.*, 449 F.3d 1320, 1331-32 (11th Cir. 2006); Fed. R. App. P. 10(a); Fed. R. Evid. 103(a)(2). In accordance with Federal Rules of Appellate Procedure 10(a), the record on appeal is comprised of "the original papers and exhibits filed in the district court; the transcript of proceedings, if any; and a certified copy of the docket entries prepared by the district clerk." An appeal is ordinarily decided on the record before the court. *Welding Servs*, 509 F.3d at 1357.

Moreover, documents not in the record ordinarily must be ignored. *See Selman*, 449 F.3d at 1332; *S & Davis Int'l, Inc. v. Republic of Yemen*, 218 F.3d 1292, 1299 n. 5 (11th Cir. 2000); *Shahar v. Bowers*, 120 F.3d 211, 213 n. 1 (11th Cir. 1997). Because the website and/or article mentioned by the University's counsel in a footnote in a reply brief is not in the record, the District Court's ruling regarding it cannot be appealed. See *Drake v. Gen. Fin. Corp. of Louisiana*, 119 F.2d 588, 589 (5th Cir. 1941). These non-record items cannot be considered in support of the University's positions (regarding its own attempt to obtain summary

judgment or in opposition to the grant of summary judgment for Prep Sportswear).

Thus, these non-record documents were properly excluded and must stay excluded.

### B.    The District Court Applied the Correct Law, and Did So Properly

The University argues that the District Court applied the wrong legal standard for determining if a court may hear a new argument raised for the first time in a reply brief. The University argues that the District Court applied a legal standard that allegedly is used only in cases on appeal. This assertion is just plain wrong. Appellate courts and district courts alike are empowered to refuse evidence and arguments submitted for the first time in a reply brief. *U.S. v. Oakley*, 744 F.2d 1553, 1556 (11th Cir. 1984); *U.S. v. Benz*, 740 F.2d 903, 916 (11th Cir. 1984); *U.S. v. Georgia Dep't of Natural Res.*, 897 F. Supp. 1464, 1471 (N.D. Ga. 1995); *Southern Pilot Ins. Co. v. CECS, Inc.*, 15 F. Supp. 3d 1284, 1290 (N.D. Ga. 2013). For the University to assert the contrary strains credibility.

Moreover, absent a clear showing of an abuse of discretion, an evidence ruling should not be disturbed. *Espino v. City of Kingsville, Tex.*, 676 F.2d 1075, 1079 (5th Cir. 1982) (citing *U.S. v. Brown*, 547 F.2d 1264, 1266 (5th Cir. 1977)).

Here, the District Court relied on *Oakley* for the proposition that courts will not consider arguments raised for the first time in reply briefs. While *Oakley* was a case on appeal and this Court held that "[a]rguments raised for the first time in a reply brief are not properly before the reviewing court," the University

mischaracterizes the term "reviewing" court in an attempt to limit this holding to appellate courts. 744 F.2d at 1556.

Contrary to the University's arguments, district courts consistently and frequently apply this standard and do not entertain new arguments raised for the first time in reply briefs. *See e.g.*, *U.S. v. Georgia Dep't of Natural Res.*, 897 F. Supp. at 1471 (where new arguments raised for the first time in a reply brief were not considered); *Kelley v. Wash. Mut. Fin. Inc.*, Civ. No. 1:11-CV-2497-RWS, 2013 WL 5530351, *4 (N.D. Ga. Oct. 4, 2013) (where it is "common practice" for a court not to hear arguments first raised in reply briefs); *Cameron v. Teeberry Logistics, LLC*, 920 F. Supp. 2d 1309, 1312 n. 1 (N.D. Ga. 2013); *Mack v. Housing Auth. for the City of Athens, Ga.*, No. 3:09-CV-62 (CDL), 2010 WL 797211, *3 n. 2 (M.D. Ga. Mar. 3, 2010) (arguments raised for first time in a footnote in a reply brief are not properly before the court); *Southern Pilot Ins.*, 15 F. Supp. 3d at 1290.

As such, arguments first raised in reply briefs are deemed not properly preserved and are waived. *See*, *e.g.*, *Connecticut State Dental Ass'n v. Anthem Health Plans, Inc.*, 591 F.3d 1337, 1351 n. 11 (11th Cir. 2009). Therefore, the District Court did not err in granting Prep Sportswear's Motion to Strike/Exclude because new arguments/evidence cannot be considered when they are raised for the first time in a reply brief.

### C.    The "Evidence" Was Not Produced In Discovery and Cannot Be Used

Exactly when the University began using the Alleged Marks in connection with different products, including apparel, was a much-pursued topic of discovery in this case. Prep Sportswear asked for that information in various document requests. (See Doc. 39-24 (Requests 2, 4, 5, 6, 8, 9, 10, 11, 14, and 22)). It asked for that information in interrogatories. (See Doc. 39-23 (Interrogatories 2, 3, and 9)). And it asked for that information through deposition questions. (See Doc. 39-5 (Topics 1, 19, and 21)). <u>The University never provided substantive answers</u>. Instead, it claimed not to have information or to know. The following Fed. Rule 30(b)(6) deposition excerpt captures the spirit of the University's responses.

Q:    So as you sit here you don't know when the text marks were first used on products?

A:    I do not, no.

Q:    Do you know when the design marks were first used on products?

A:    I do not.

Q:    Do you know if there was any period when marks were not used on products, any of those four marks?

A:    I do not have any idea.

Q:    And would there be anyone at the College who would know when marks were used on products?

42

A    I don't believe anyone's going to have specificity of that, no.

(Doc. 39-6 at p. 15)

While refusing to produce evidence regarding first use or advertising in response to Prep Sportswear's discovery, the University nevertheless mentioned three pieces of evidence in its Reply Brief that touch on these topics. First, the University cited a webpage in footnote 1 for the proposition that "the University's use on apparel is prior to Defendant's claimed first use of the University's marks in 2009." (Doc. 49 p. 2 n. 1). Second, the University relied on a new declaration statement from Hannah Flower to support the assertion that it spent $16 million over five years advertising its services. (Doc. 49-2 ¶ 2). Finally, the University relied on another statement from Ms. Flower for the assertion that it advertises through websites, magazines, journals, newsletters among others. (Doc. 49-2 ¶ 3).

The University had a duty to supplement its discovery responses under Federal Rule of Civil Procedure 26, which it has not done even to this day. Under the Federal Rules of Civil Procedure, parties are not allowed to lie in wait to produce evidence at summary judgment or trial when that same evidence has been withheld during discovery. See Fed. R. Civ. P. 26. But that is precisely what the University did regarding the evidence at issue. The University repeatedly told Prep Sportswear that it had no evidence related to first use on apparel and that it did not advertise the marks in connection with the sale of apparel. However, in its

43

summary judgment reply brief, it mentioned new evidence arguing that its first use at least occurred before 2009 and that it spent large amounts of money advertising the educational service marks through multiple channels over a number of years. (Doc. 49 p. 2 and Doc. 49-2 ¶¶ 2-3). Prep Sportswear can test none of these assertions because discovery closed months ago.

Rule 26(e)(1) requires parties to timely supplement their discovery responses, and Rule 37(c)(1) prohibits a party from using information that has not been timely provided under Rule 26(e) unless the failure to produce was either substantially justified or harmless. Fed. R. Civ. P. 26(e)(1); Fed. R. Civ. P. 37(c)(1). Here, Rule 37 virtually mandates the exclusion of the offending evidence from consideration on summary judgment (or at trial), which the District Court properly did. *See*, *e.g.*, *Stallworth v. E-Z Serve Convenience Stores*, 199 F.R.D. 366, 369 (2001) (striking summary judgment reply exhibits under Rule 37(c)(1) because they were not disclosed during discovery). "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(l). "The burden of establishing that a failure to disclose was substantially justified or harmless rests on the nondisclosing party." *Mitchell v.*

*Ford Motor Co.*, 318 F. App'x 821, 824 (11th Cir. 2009) (citing *Leathers v. Pfizer, Inc.*, 233 F.R.D. 687, 697 (N.D. Ga. 2006)).

The University failed to establish this requisite showing, therefore the new evidence is properly excluded in accordance with Rule 37(c)(1). By failing to produce the information during the discovery period, the University was and still should be prevented from submitting and relying on such information without first demonstrating that it was substantially justified in not producing the information and that its failure was harmless. The University has not, and cannot, satisfy its burden.

### D.   The New "Evidence" is Contrary To the University's Discovery Responses

The University's new "evidence" allegedly shows its use of the claimed marks on apparel prior to Prep Sportswear's use. As the University throughout discovery consistently claimed it had no evidence of first use or use at all of the Alleged Marks on apparel, as discussed in Part C *supra*, this new evidence directly contradicts the University's previous discovery responses. Moreover, while the University's failure to disclose these facts was reason enough to exclude them for purposes of summary judgment, the District Court properly excluded the evidence under the theory of estoppel. (Doc. 53 p. 7).

Under the theory of estoppel, a district court may disregard evidence that contradicts prior testimony. *See*, *e.g.*, *Kernel Records Oy v. Mosley*, 694 F.3d 1294,

1300 n. 6 (11th Cir. 2012) ("A district court may disregard an affidavit as a sham when a party to the suit files an affidavit that contradicts, without explanation, prior deposition testimony on a material fact"). Here, the evidence contradicted testimony of the University's only two deponents and admissions that it had made in prior submissions.

Indeed, the University expressly admitted in a prior summary judgment submission that it has no evidence of when it first used the Alleged Marks in connection with the sale of apparel or related goods ("Plaintiff does not dispute [that it has no evidence of when each of the Alleged Marks was first used in connection with the sale of apparel or related goods].") (Doc 46-1 ¶ 24). The website/article allegedly contradicts directly the University's prior statement that it did not know of a first use or prior use date of the Alleged Marks in connection with apparel or related goods. Notwithstanding its failure to produce the evidence requested and its contradictory statements regarding the very information requested, the University attempted and still attempts to improperly rely on the new evidence.

### E.    A Footnote In a Brief Mentioning a Website Or An Article Is Not Evidence

Attorney arguments in a brief are not evidence. *Bryant v. United States Steel Corp.*, 428 F.App'x 895, 897 (11th Cir. 2011). Therefore, the characterization by the University's counsel in the footnote of the University's summary judgment

reply brief about the alleged content of a website is not evidence of what is actually contained in the website, let alone evidence of trademark use by the University. Regardless of what was actually on the website, if it had been submitted to the District Court, it still would have had to be authenticated and shown to not be hearsay. The University did neither of those things. The fact that the University did not make an evidentiary foundation and actually submit admissible evidence may be unfortunate for the University, but it is not error on the part of the District Court to refuse to admit the merely-mentioned website/article as evidence.

**F.    The "Evidence" the University Seeks to Have Considered Is No Longer Available**

Unfortunately for all concerned, the website link no longer links to the article that the University would like to have this Court rely upon. Thus, if one goes to the website http:dining.savannahnow.com/sports/2008-01-26/sportsmerch andising-lucrative (as recited in the University's summary judgment reply brief), one does not retrieve the information that the University repeatedly asserts is (was) there. (Doc. 49 p. 2 n. 1). The University claims this webpage was from January 26, 2008. But apparently, the website content has changed over time, as is common, as the hot link goes to a "page not found" listing. Yet, the University baldly states that Prep Sportswear "could conduct the same or a similar search of the internet to locate information about the University's sale of apparel" assuming as such it would allegedly find this website the University cites as proof.

47

Prep Sportswear is unsure how and where the University's counsel found this website. An attempt to visit the webpage directly does not produce the website/article the University mentions and describes. An attempt to use https://archive.org/web/ (or the "Wayback Machine" as it is commonly called) also proves fruitless. Neither dining.savannahnow.com nor dining.savannahnow.com/sports appear to be archived prior to April 10, 2008. This calls into question the authenticity of the alleged evidence, as Prep Sportswear was unable to locate it. As the website does not now exist, this Court has no way of reviewing the "evidence" and therefore cannot allow for its admission.

### G.    There Is No Harm In Excluding the Website (and/or Article)

In opposing the Motion to Strike, the University argued that priority is not an issue in this case and that the University's trademark rights are not tied to whether or when it has used marks on apparel. (Doc. 51 p. 13). Indeed, in its principal appeal brief, the University asserts that the website is "irrelevant to the resolution of this case." (Appellant's Br. at 40). As such, the University has not established that the exclusion ruling resulted in a "substantial prejudicial effect." Therefore, the admissibility ruling should not be overturned. *Piamba Cortes v. Am. Airlines, Inc.*, 177 F.3d 1272, 1305 (11th Cir. 1999).

Finally, even if this Court is inclined to think that the "evidence" should have been admitted and considered, since it is impossible now to establish the

content of the website at the time of summary judgment or the time of the article (due to not being of record and the website no longer existing/containing what the University claimed previously), it is impossible to say that the evidence would have made any difference in the outcome on summary judgment. Thus, if it were error, it was harmless error (as the University cannot prove harmful effect).

## CONCLUSION

For the reasons set forth above, Prep Sportswear respectfully requests that this Court affirm the District Court's evidentiary ruling and grant of summary judgment.

This 4th day of November, 2015.

/s/ Arthur A. Gardner
Arthur A. Gardner
GARDNER GROFF GREENWALD &
VILLANUEVA, PC
2018 Powers Ferry Road, Suite 800
Atlanta, Georgia 30339
(770) 984-2300

and

Leslie C. Ruiter *(Pro Hac Vice)*
Bradford J. Axel *(Pro Hac Vice)*
STOKES LAWRENCE, P.S.
1420 Fifth Avenue, Suite 3000
Seattle, WA 98101-2393
(206) 626-6000
lcr@stokeslaw.com
bja@stokeslaw.com

*Attorneys for Defendant-Appellee*

49

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing brief complies with F.R.A.P. 32(a)(7) and contains fewer than 14,000 words. Specifically, the brief has 11,593 words.  The typeface and font is Times New Roman 14 pt.

Dated: <u>November 4, 2015</u>                <u>*/s/ Arthur A. Gardner*</u>
                                                    *Counsel for Appellee*

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on this 4th day of November, 2015, I caused this Brief of Appellee to be filed electronically with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

> W. Scott Creasman
> Kelly Casey Mullally
> Seth Kincaid Trimble
> TAYLOR ENGLISH DUMA, LLP
> 1600 Parkwood Circle, Suite 400
> Atlanta, Georgia  30339
> (678) 336-7234
>
> *Counsel for Appellant*

I further certify that on this 4th day of November, 2015, I caused the required number of bound copies of the foregoing Brief of Appellee to be filed via UPS Ground Transportation with the Clerk of this Court.

*/s/ Arthur A. Gardner*
*Counsel for Appellee*
