**15-13830**

IN THE

# United States Court of Appeals

## FOR THE ELEVENTH CIRCUIT

◆◆◆

SAVANNAH COLLEGE OF ART AND DESIGN, INC.,

*Plaintiff-Appellant,*

—v.—

SPORTSWEAR, INC., d.b.a. PREP SPORTSWEAR,

*Defendant-Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA

## **REPLY BRIEF FOR PLAINTIFF-APPELLANT**

W. SCOTT CREASMAN
KELLY CASEY MULLALLY
SETH KINCAID TRIMBLE
TAYLOR ENGLISH DUMA, LLP
1600 Parkwood Circle, Suite 400
Atlanta, Georgia 30339
(770) 434-6868

*Attorneys for Plaintiff-Appellant*

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................ i

TABLE OF CITATIONS .................................................................... iii

INTRODUCTION ...............................................................................1

ARGUMENT AND CITATIONS OF AUTHORITY ............................2

I.      Sportswear's Analysis of This Case Is Fundamentally Flawed...................2

    A.    Sportswear's Attempts to Discount *Boston Professional Hockey* and *University of Georgia* Are Unsuccessful ...................................5

    B.    Sportswear's Continued Focus on the Wrong Case Law Only Highlights the Error in Its Analysis...................................................7

    C.    SCAD's Case Is Not Based on a "Right in Gross" or a "Merchandising Right"............................................................9

    D.    Sportswear Has No Functionality Defense ...............................9

II.     SCAD's Evidence Establishes a Likelihood of Confusion.......................11

    A.    Supreme Court Authority Forecloses Sportswear's Argument Regarding the Strength of SCAD's Marks ...............................................13

    B.    Sportswear Misstates the Statutory "Use" Requirement.........................14

    C.    The Products, Customers, and Advertising Factors Favor SCAD...........15

    D.    Sportswear Misunderstands the Intent Analysis .....................................16

    E.    Sportswear Misapplies the Actual Confusion Factor...............................19

    F.    Sportswear is Not Entitled to Summary Judgment ..................................22

III.    SCAD Did Not Abandon Its Rights .............................................................25

IV.    The Cited Article Was Properly Before the Lower Court .........................26

    A.    The Article Is Freely Available at the Website Cited by SCAD..............27

    B.    Sportswear's Discovery Requests Were Specifically Directed to First Use Rather Than Use Before 2009 ..................................................28

CONCLUSION ..................................................................................................29

# TABLE OF CITATIONS

## Cases

*A&H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*,
   237 F.3d 198 (3d Cir. 2000).................................................................21

*Amstar Corp. v. Domino's Pizza, Inc.*, 615 F.2d 252 (5th Cir. 1980) ....................19

*Au-Tomotive Gold, Inc. v. Volkswagen of Am., Inc.*,
   457 F.3d 1062, 107 (9th Cir. 2006) ....................................................12

*Babbit Elecs., Inc. v. Dynascan Corp.*,
   38 F.3d 1161  (11th Cir. 1994) ............................................... 13, 19, 31

*Bauer Lamp Co. v. Shaffer*, 941 F.2d 1165 (11th Cir. 1991) ..................................22

*Bd. of Governors of the Univ. of North Carolina v. Helpingstine*,
   714 F. Supp. 167 (M.D.N.C. 1989) ....................................................27

*Bd. of Supervisors for La. State Univ. Agric. & Mech. Coll. v. Smack Apparel Co.*,
   550 F.3d 465 (5th Cir. 2008) ..............................................................30

*Boston Prof'l Hockey Ass'n v. Dallas Cap & Emblem Mfg., Inc.*,
   510 F.2d 1004 (5th Cir. 1975) .................................................... passim

*Brooks Shoe Mfg. Co. v. Suave Shoe Corp.*,
   716 F.2d 854 (11th Cir. 1983) ..................................................... 21, 22

*Crystal Entm't & Filmworks, Inc. v. Jurado*,
643 F.2d 1313 (11th Cir. 2011) .................................................. 8, 9, 10

*Dastar Corp. v. Twentieth Century Fox Film Corp.*,
   539 U.S. 23 (2003).............................................................................20

*Dippin' Dots, Inc. v. Frosty Bites Distrib.,*
   *LLC*, 369 F.3d 119 (11th Cir. 2004) ..................................................11

*Frehling Enters. v. Int'l Select Grp., Inc.*,
192 F.3d 1330 (11th Cir. 1999) ....................................................5, 25

*Kentucky Fried Chicken Corp. v. Diversified Packaging Corp.*,
549 F.2d 368 (5th Cir. 1977) .............................................................6

*Kernel Records Oy v. Mosley*, 694 F.3d 1294 (11th Cir. 2012) .............................34

*McMillian v. Johnson*, 88 F.3d 1573 (11th Cir. 1996) ............................................33

*Montgomery v. Noga*, 168 F.3d 1282 (11th Cir. 1999) ...........................................24

*Nat'l Football League Props., Inc., v. Wichita Falls Sportswear, Inc.*,
532 F. Supp. 651 (W.D. Wash. 1982)...................................................28

*Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*, 269 U.S. 189 (1985).....................16

*Publ'n Int'l, Ltd. v. Landoll, Inc.*, 164 F.3d 337 (7th Cir. 1998)...........................11

*Qualitex Co. v. Jacobson Prods. Co.*, 514 U.S. 15 (1995).....................................11

*Safeway Stores, Inc. v. Safeway Disc. Drugs, Inc.*,
675 F.2d 1160 (11th Cir. 1982) ...........................................................14

*Supreme Assembly*, *Order of Rainbow for Girls v. J.H. Ray Jewelry Co.*,
676 F.2d 1079 (5th Cir. 1982) .................................................... 28, 29

*Tampa Bay Water v. HDR Eng'g, Inc.*, 731 F.3d 1171 (11th Cir. 2013) ...............34

*Tana v. Dantanna's*, 611 F.3d 767 (11th Cir. 2010) .............................................19

*Univ. of Alabama Bd of Trs. v. New Life Art, Inc.*,
1683 F.3d 1266 (11th Cir. 2012) .........................................................22

*Univ. of Georgia Athletic Ass'n v. Laite*,
756 F.2d 1535 (11th Cir. 1985) ................................................. passim

*Versa Prods. Co. v. Bifold Co.*, 50 F.3d 189 (3d Cir. 1995)....................................22

iv

*Welding Servs., Inc. v. Forman*, 509 F.3d 1351 (11th Cir. 2007) ..........................19

*Wesco Mfg. v. Tropical Attractions of Palm Beach, Inc.*,
    833 F.2d 1484 (11th Cir. 1987) ...........................................................................14

**Statutes**

15 U.S.C. § 1114 ................................................................................. 13, 14

15 U.S.C. § 1125 ....................................................................................14

**Rules**

Fed. R. Civ. P. 37 ..................................................................................29

Fed. R. Evid. 902 ..................................................................................28

**Other Authorities**

J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 7:82
    (4th ed. 2015) ...................................................................................10

## INTRODUCTION

The issue in this case is whether a plaintiff educational institution may prevent the unauthorized use of its trademarks on clothing based on federal trademark registrations and common-law trademark rights as to educational services, or whether the institution must additionally and separately obtain registrations designating apparel. Defendant-Appellee Sportswear, Inc., ("Sportswear") contends that, for Plaintiff-Appellant Savannah College of Art and Design, Inc., ("SCAD") to rely on its federal trademark registrations, the registrations must specify apparel; the law of this Court holds that no such requirement exists.

Indeed, taken to its full extent, Sportswear's theory would require a trademark holder to obtain defensive registrations in every conceivable market in which a defendant might potentially use a plaintiff's marks, even if the plaintiff has no desire to engage in the activities covered by a particular trademark classification—an unduly burdensome and costly task not required by the Lanham Act. Although there might be some activities that are so divergent from those specified in a trademark registration that a likelihood of confusion would not exist, the law of this Court logically recognizes that educational services and apparel do not present such a situation. To the contrary, these two activities present *exactly*

1

the type of scenario in which the consumer would expect the goods at issue to originate with, or at least be endorsed by, the educational service provider.

Sportswear's alternative arguments in favor of affirmance also fail. The evidence presented below establishes a likelihood of confusion sufficient to support summary judgment in SCAD's favor. At a minimum, SCAD's evidence establishes a genuine issue of material fact, and thus the District Court's grant of summary judgment to Sportswear cannot be affirmed on this basis. Sportswear's arguments regarding the lower court's exclusion of an article cited by SCAD likewise do not support affirmance of that ruling, should this Court decide to reach the issue.

In sum, Sportswear has concededly used SCAD's marks without SCAD's consent. The precedent of this Court, and the facts of this case, compel the conclusion that Sportswear's actions are likely to confuse the public into believing, at a minimum, that Sportswear's products are associated with SCAD or that SCAD sponsored, licensed, or consented to the production and sale of Sportswear's products. The District Court's decision to the contrary should be reversed.

## ARGUMENT AND CITATIONS OF AUTHORITY

### I.    Sportswear's Analysis of This Case Is Fundamentally Flawed

Sportswear's brief relies on a series of arguments regarding "clothing

trademarks" and "merchandising rights." (*See, e.g.*, RB,[1] pp. 10, 12, 21, 28, 31-32, 34-35). All of these arguments and contrived terms rest one, fundamentally flawed premise: that SCAD's trademark registrations directed to educational services are insufficient to allow SCAD to recover and that SCAD must instead establish registrations directed to apparel or common law rights through use of its marks on apparel. This is the crux of the parties' dispute and the basis for SCAD's appeal. Based on *Boston Professional Hockey Ass'n v. Dallas Cap & Emblem Manufacturing, Inc.*, 510 F.2d 1004 (5th Cir. 1975), and *University of Georgia Athletic Ass'n v. Laite*, 756 F.2d 1535 (11th Cir. 1985), Sportswear's premise is legally incorrect. Those cases flatly reject Sportswear's position, providing that SCAD's trademark registrations and common-law trademark rights for educational services support SCAD's claim for relief on the facts of this case.[2] (BB,[3] pp. 15-22

---

[1] Sportswear's principal brief.

[2] Although SCAD did additionally plead common law infringement (Doc. 1, p. 6), as the case proceeded, SCAD focused on the rights afforded by its federally registered marks for services, which SCAD also pleaded (Doc. 1, pp. 5-6) and which have featured prominently in SCAD's approach to this case even from the time that SCAD initially contacted Sportswear to discontinue its use of SCAD's marks (Doc. 1-10, pp. 1-3). The above precedent supports, as a matter of law, SCAD's position in doing so, and establishes that a plaintiff in SCAD's position may obtain summary judgment, desirable to most litigants, on that basis. Although it is irrelevant, Sportswear is wrong to accuse SCAD of making false statements to this Court (RB, pp. 13-14) regarding SCAD's non-reliance on its common law rights. Not only is SCAD appropriately narrowing the issues in this appeal, but SCAD also expressly made clear its position in the lower court as well, both through its theory of the case (Doc. 40-1, p. 21-22; Doc. 46, pp. 3-9; Doc. 49, pp.

(discussing *Boston Professional Hockey* and *University of Georgia*)). Consequently, Sportswear's arguments focusing on SCAD's common law rights (*e.g.*, RB, Part I.B) are entirely irrelevant.[4]

The District Court erred by ignoring *Boston Professional Hockey* and *University of Georgia*.  As a result, SCAD takes particular issue with Sportswear's mischaracterization of SCAD's position on appeal:  SCAD does not concede that it failed to make a showing that it has rights to its marks with respect to clothing (RB, p. 10; *see also id.* p. 17).  Although SCAD agrees that the District Court based its decision on a perceived lack of "clothing trademarks" (RB, p. 10), holding that SCAD could recover in this case only if it showed common law use of the marks, SCAD does not agree that the District Court was correct in doing so. The law of this Court establishes that SCAD's registrations directed to educational services allow it to prevent the unauthorized use of its marks on apparel under the

---

2-3, 11-13) and affirmative statements (Doc. 51, p. 3 n.2 ("SCAD's case is not dependent on when SCAD first began selling or advertising apparel with SCAD's trademarks")).

[3] SCAD's principal brief.

[4] Sportswear is nevertheless incorrect in any event that SCAD "does not manufacture or sell clothing" (RB, p. 12).  (*See* Doc. 46-1, pp. 11, 15).  At a minimum, the activities of Follett Education Group, Inc., ("Follett") SCAD's licensee in making, selling, and promoting SCAD apparel, inure to SCAD's benefit.

circumstances of this case, and SCAD thus does have "ownership of marks used with apparel" (RB, p. 17).

A.    **Sportswear's Attempts to Discount *Boston Professional Hockey* and *University of Georgia* Are Unsuccessful**

Sportswear's efforts to avoid those decisions—because they conclusively resolve this case against Sportswear—are meritless. First, that *Boston Professional Hockey* is a "forty-year old opinion" (RB, p. 31) does not impair its value as precedent. Indeed, the Court has continued to cite the case for substantive propositions of law, *see, e.g.*, *Frehling Enters. v. Int'l Select Grp.*, *Inc.*, 192 F.3d 1330, 1334 n.1 (11th Cir. 1999), and Sportswear identifies no cases in which this Court has cast doubt on its holdings. Far from undermining the decision, *Kentucky Fried Chicken Corp. v. Diversified Packaging Corp.*, 549 F.2d 368 (5th Cir. 1977), cited by Sportswear (RB, p. 33), *reaffirmed* the conclusion in *Boston Professional Hockey* and only further supports SCAD's case:

> [Defendant's] focus on the trademarked products erroneously assumes that infringement occurs only when the alleged infringer uses the mark on the same category of product with respect to which the trademark owner obtained the mark. We have squarely and repeatedly rejected that position.... [T]he fact that the buyers knew the *symbols* originated with Boston Hockey supported the inescapable inference that many would believe that the *product itself* originated with or was somehow endorsed by Boston Hockey. Buyers may have had no reason to expect Boston Hockey to possess expertise in manufacturing shoulder patches, but to a Bruins fan the club's endorsement would be much more important than the quality of the

5

stitchery.  And Boston Hockey had every right to reap the rewards of its trademark's popularity.

549 F.2d at 389 (emphasis in original); *see also id.* (factually distinguishing *Boston Professional Hockey* because, among other things, case involved sales to franchisees rather than general public).  Sportswear's attempt to indicate otherwise with a cropped quote is unhelpful sophistry.  (RB, p. 33).

Sportswear's attempts to distinguish *University of Georgia* likewise fail. Not only do most of the purported factual differences (RB, pp. 31-32 n.6), mentioned only in a footnote, not exist,[5] but Sportswear attributes no legal significance to them, and indeed, they have none.  In particular, even accepting *arguendo* Sportswear's assertions, they do not change this Court's rule allowing Sportswear to rely on its registrations to educational services.    Further, Sportswear's barely comprehensible, last-ditch attempt to avoid *University of Georgia* based on the Federal Trademark Dilution Act (RB, p. 34 n.7) is also ineffectual, as SCAD has raised no dilution claims and that legislation has no bearing on the issues at hand.

---

[5] For example, SCAD has also brought forth sufficient evidence of actual confusion, like the plaintiff in *University of Georgia* (BB, p. 38; Part II.E, *infra*), and Sportswear's assertions regarding acquired distinctiveness are wrong for the for the reasons discussed in Part II.A, *infra*.

Sportswear's final suggestion for avoiding both *Boston Professional Hockey* and *University of Georgia*, that "more recent"[6] decisions of this Court and the Supreme Court implicitly overrule those cases (RB, Part V.C), should also be rejected. None of the cases cited, and only loosely described, by Sportswear address the issue presented in this case. There are many additional reasons the cases are distinguishable, but perhaps the most compelling basis for their inapplicability is their holdings are grounded on a statutory change that Congress has not altered: "A broadening of the protection afforded by the statute occurred by amendment in 1962 which deleted the previously existing requirement that the confusion or deception must relate to the 'source of origin of such goods or services.'" *Boston Prof'l*, 510 F.2d at 1010. That this Court or the Supreme Court would reach a result contradicting the statute, *i.e.*, reading back into the Lanham Act the requirement that "confusion must be as to the origin of the goods," as espoused by Sportswear (RB, p. 35 n.9)—and without expressly addressing the issue—is implausible.

### B. Sportswear's Continued Focus on the Wrong Case Law Only Highlights the Error in Its Analysis

Sportswear's brief fails to address any of the outcome-determinative differences between this case and *Crystal Entertainment & Filmworks, Inc. v.*

---

[6] Oddly, one of the cases that Sportswear contends changed or clarified this Court's law (RB, p. 35 n.9) was decided in 1984, before *University of Georgia*.

7

*Jurado*, 643 F.2d 1313 (11th Cir. 2011).  (BB, pp. 22-26).  Sportswear's attempt to

avoid these distinctions by asserting that SCAD's arguments that the instant case is

not a priority contest are being raised for the first time is preposterous, as this was

also SCAD's position below.  (Doc. 51, p. 13[7] ("priority is not an issue in this

case."); *see also id.* p. 14; Doc. 46, p. 3; Doc. 49, p. 2 n.1).  Similarly, Sportswear's

description of the lower court's reliance on *Crystal Entertainment* as a series of

uncontroversial propositions (RB, p. 15) is belied by the court's opinion:

> Plaintiff admits that it does not have registrations for the marks related
> to apparel.  Instead, the Plaintiff argues that it needs no such
> registrations.  *Because the Plaintiff does not have registered marks for
> apparel*, it must show that it used the marks in commerce prior to the
> Defendant's use.

(Doc. 53, pp. 5-6 (citing, in footnote 26, *Crystal Entertainment* as only support for

the quoted statement) (emphasis added)).  This reasoning alone shows that the

court relied on *Crystal Entertainment* to reject SCAD's position in contravention

of *Boston Professional Hockey* and *University of Georgia*.  That is indeed a point

of controversy, both in this appeal and because *Crystal Entertainment* would

conflict with *Boston Professional Hockey* and *University of Georgia* if it stood for

the proposition Sportswear and the District Court attribute to it.  Sportswear's

continued attempt to invoke *Crystal Entertainment* and argue this case as one

---

[7] Citations to page numbers correspond to the page number reflected in the District
Court docket entries, at the top, or in some cases, left-hand side, of the document.

involving a priority dispute involving common law rights shows that its position is fundamentally mis-formulated, at best.[8]

### C.    SCAD's Case Is Not Based on a "Right in Gross" or a "Merchandising Right"

Sportswear attempts to portray SCAD's case as based on broad, boundless rights.  To be sure, there are limits to a trademark plaintiff's ability to prohibit activities outside the categories specifically designated in its trademark registrations.  For example, SCAD has not claimed that consumers would likely be confused into believing that scad fish (*see, e.g.*, Doc. 44-2, pp. 2-3 (website images produced by Sportswear showing tee shirts bearing "Scad Jack Mackerel" and "Scad Jack (Green Jack) fish")), are associated with SCAD.  But this case does not even come close to testing those boundaries or rising to the level of a plaintiff seeking a "right in gross" or general "merchandising right," as alleged by Sportswear (RB, pp. 11-12).  Instead, it falls squarely within this Court's long-standing precedent that SCAD's educational service-mark rights prevent the sale of goods such as Sportswear's SCAD apparel without SCAD's authorization.

### D.    Sportswear Has No Functionality Defense

Lastly, the functionality doctrine Sportswear relies on in connection with its "merchandising right" argument (RB, pp. 34-35) is irrelevant to this case.

---

[8] See *infra* Part II.E and note 10, for further discussion of the arguments on pages 15-17 of Sportswear's brief tangentially related to *Crystal Entertainment*.

Sportswear's argument seems to be that it is using SCAD's trademarks to show affiliation between individuals wearing Sportswear's SCAD apparel and SCAD and that SCAD's trademarks are therefore functional features. Although a functionality defense—for which a defendant bears the burden—does exist in trademark law, it, and the various Eleventh Circuit and Supreme Court cases cited (but unexplained) by Sportswear (RB, pp. 34-35) have no bearing on this case. The functionality defense protects uses of trademarks that deal with features (usually design or physical aspects of a product) that are unrelated to the goodwill of the trademark holder. *See, e.g.*, *Qualitex Co. v. Jacobson Prods. Co.*, 514 U.S. 159, 166 (1995) (emphasizing that functionality protects against a competitive disadvantage "unrelated to recognition or reputation"); *Dippin' Dots, Inc. v. Frosty Bites Distrib., LLC*, 369 F.3d 1197, 1203-04 (11th Cir. 2004) ("Functional features are by definition those likely to be shared by different producers of the same product and therefore are unlikely to identify a particular producer." (quoting *Publications Int'l, Ltd. v. Landoll, Inc.*, 164 F.3d 337, 340 (7th Cir. 1998)).

The premise of Sportswear's position, that it is at a non-reputation-related disadvantage because it cannot charge as much for its tee shirts if it cannot trade on SCAD's reputation, would stretch the functionality defense beyond recognition. Although this Court has not yet addressed an argument identical to Sportswear's, other authorities have soundly rejected it. *See, e.g.*, 1 J. Thomas McCarthy,

10

*McCarthy on Trademarks and Unfair Competition* § 7:82 (4th ed. 2015) (dismissing theory of defensive aesthetic functionality when trademark is used in a "decorative" sense); *see also Au-Tomotive Gold, Inc. v. Volkswagen of America, Inc.*, 457 F.3d 1062, 1074, n.9 & 1074 (9th Cir. 2006) (reviewing the "chronological development and refinement" of functionality argument raised by Sportswear here and concluding, "[defendant's] argument is just another way of saying, 'If I can't trade on your trademark, I can't compete.' .... Any disadvantage [defendant] claims in not being able to sell Volkswagen and Audi marked goods is tied to the reputation and association with Volkswagen and Audi."). Here, the only value to Sportswear in using SCAD's trademarks is in calling to mind SCAD, its educational services, and reputation, and Sportswear has not met its burden of proving that such a use of SCAD's trademarks falls within the ambit of the functionality defense.

## II.    SCAD's Evidence Establishes a Likelihood of Confusion

Sportswear further attempts to avoid *University of Georgia* by misstating SCAD's reliance on it. (RB, pp. 31-33). SCAD does not argue that *University of Georgia* relieves a plaintiff of the need to prove a likelihood of confusion. Instead, SCAD has brought forth evidence establishing a likelihood of confusion and, based on that evidence and the factual and legal similarities between the instant case and the Court's precedent, *University of Georgia* and *Boston Professional Hockey*

11

establish that SCAD's evidence is sufficient to support a finding of likelihood of confusion as a matter of law.

SCAD agrees with Sportswear that the issue of likelihood of confusion is appropriate for resolution on summary judgment. (RB, p. 18 n.1). Cases similar to the instant suit have been resolved on summary judgment even without addressing the two factors—mark strength and evidence of actual confusion—that Sportswear emphasizes as "most significant" (RB, p. 18), *see, e.g.*, *Babbit Elecs., Inc. v. Dynascan Corp.*, 38 F.3d 1161, 1179 (11th Cir. 1994) (per curiam) ("In fact, a likelihood of confusion can be found *as a matter of law* if the defendant intended to derive benefit from the plaintiff's trademark." (emphasis added)); (*see also* BB, pp. 31, 37), although those two factors weigh in SCAD's favor in any event. Significantly, Sportswear's argument that the Court "has consistently demanded that lower courts consider all seven likelihood of confusion factors" (RB, pp. 33-34) misses the point, as even the case law cited by Sportswear provides, "we may affirm an ultimate finding on the issue of confusion that is not clearly erroneous, even when the district court fails to consider all seven factors." *Wesco Mfg. v. Tropical Attractions of Palm Beach, Inc.*, 833 F.2d 1484, 1489 (11th Cir. 1987) (citing *Univ. of Georgia*, 756 F.2d at 1542-43; *Safeway Stores, Inc. v. Safeway Discount Drugs, Inc.*, 675 F.2d 1160, 1163-64 & n. 3 (11th Cir. 1982)); (*see also* BB, p. 31). This issue was specifically raised by the defendant in *University of*

12

*Georgia*, where the Court concluded that the "defendant's intent and the similarity of design between the two marks [were] sufficient to support the district court's finding of a 'likelihood of confusi[on],'" 756 F.2d at 1542, 1545.

Nevertheless, SCAD has demonstrated that all of the likelihood of confusion factors weigh in its favor (BB, pp. 30-40), and Sportswear points to no genuine issues of material fact.  Instead, Sportswear's response is based on numerous flawed legal arguments.

### A.    Supreme Court Authority Forecloses Sportswear's Argument Regarding the Strength of SCAD's Marks

Contrary to Sportswear's assertions (RB, p. 19), it has used SCAD's bee design mark by reproducing the bee portion of it (*see, e.g.*, Doc. 40-10, pp. 5, 12-14).  The Lanham Act does not require that a defendant reproduce identically or in whole a plaintiff's mark.  *See, e.g.*, 15 U.S.C. § 1114 (1)(a) (2006) (prohibiting "any reproduction, counterfeit, copy, or colorable imitation of a registered mark").

Sportswear's remaining argument is a challenge to SCAD's text marks, SAVANNAH COLLEGE OF ART AND DESIGN and SCAD, on the basis of descriptiveness.  (RB, p. 19).  Even for SCAD's marks (or portions thereof) that could have at one time been considered descriptive, SCAD proved acquired distinctiveness to achieve registration, and those registrations are now incontestable.  (BB, pp. 4, 33).  Supreme Court authority accordingly addresses—

and forecloses—Sportswear's argument, as incontestable marks may not be challenged as merely descriptive. *See Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*, 269 U.S. 189, 205 (1985) ("We conclude that the holder of a registered mark may rely on incontestability to enjoin infringement and that such an action may not be defended on the grounds that the mark is merely descriptive.").

### B.    Sportswear Misstates the Statutory "Use" Requirement

Sportswear does not contest the similarity between Sportswear's and SCAD's marks. Instead, Sportswear's response regarding this factor is based on a misunderstanding of the relevant analysis. *University of Georgia* makes clear that a comparison of the marks on SCAD's and Sportswear's products is the appropriate way to analyze this factor. *See, e.g.*, 756 F.2d at 1543-44 (comparing defendant's product to plaintiff's trademark and noting, "[t]he most cursory visual examination of the two bulldogs in this case reveals their similarity"). Further, even assuming *arguendo* that there was any merit to Sportswear's argument that it does not apply SCAD's trademarks to clothing in a manner that indicates source (RB, p. 20), the Lanham Act does not require use of a plaintiff's trademark *as a trademark*. Section 32 of the Lanham Act makes actionable an unauthorized person's "*use in commerce* [of] any reproduction ... of a registered mark *in connection with* the sale, offering for sale, distribution, or advertising of any goods or services on or *in connection with* which such use is likely to cause confusion, or

14

to cause mistake, or to deceive[.]" 15 U.S.C. § 1114 (a) (all emphasis added).
Section 43(a) is to the same effect. 15 U.S.C. § 1125(a). The statutes thus make actionable much broader uses of a trademark than required by Sportswear's argument.

Sportswear's analysis of this factor goes further astray when it attempts to incorporate its flawed functionality argument. As explained *supra* Part I.D, that argument has no merit. *See also infra* Part II.F (discussing *Supreme Assembly*).

### C.    The Products, Customers, and Advertising Factors Favor SCAD

Sportswear's arguments regarding these three factors are once again based on a refusal to acknowledge, or even respond to, this Court's case law set forth in SCAD's principal brief. (BB, pp. 35-36). Sportswear's argument regarding the similarity of the goods/services (RB, pp. 35-36) factor conflicts with *University of Georgia*, which held that the university plaintiff could prohibit defendant's sale of a product that the plaintiff did not even produce. 756 F.2d at 1546-47. Further, that Sportswear's customers choose certain aspects of the apparel does not eliminate the likelihood of confusion, and neither do Sportswear's disclaimers, as this Court has held (BB, p. 36).

Lastly, Sportswear is incorrect that "substantial third-party use" of SCAD's marks (RB, p. 23) exists. (Doc. 39-2, p. 12 (alleging *three* instances of other uses)). Not only is SCAD is actively investigating the third-party uses of SCAD's

15

trademarks (Doc. 46-1, pp. 27-28), but Sportswear's argument is also of little value in any event, *see, e.g.*, *Univ. of Georgia*, 756 F.2d at 1545 & n.27 (addressing authorized and unauthorized uses of plaintiff's mark and concluding, "[n]or do we find it significant that the record in this case includes numerous examples of products containing either exact or approximate reproductions of the 'University of Georgia Bulldog.'").

### D.    Sportswear Misunderstands the Intent Analysis

In discussing this factor, Sportswear focuses only on its "intent to print" and the "intent[] to confuse consumers as to the source of the clothing items that they were buying." (RB, p. 25). Although SCAD does not agree that Sportswear did not intend to confuse consumers as to the source of Sportswear's clothing or SCAD's sponsorship of it, the intent relevant to analysis of this factor is broader and includes the intent—which Sportswear effectively admits that it possesses in this case—to capitalize on a trademark holder's good will and reputation. *See, e.g.*, *Univ. of Georgia*, 756 F.2d at 1545 ("The defendant's intent likewise is apparent from the record.... [Defendant's beer] was *intended to capitalize on the popularity of the University of Georgia football program*." (emphasis added)); *id.* (noting that defendant hoped to sell the beer at issue "not because the beer tastes great but because the cans would *catch the attention of University of Georgia football fans*" (emphasis added)); *Amstar Corp. v. Domino's Pizza, Inc.*, 615 F.2d

16

252, 263 (5th Cir. 1980) (noting that "*intent of deriving benefit from the reputation of [the mark holder]*" is a "critical factor" (emphasis added) (quoting Restatement of Torts § 729, cmt. f (1938)); *Welding Servs., Inc. v. Forman*, 509 F.3d 1351, 1360 (11th Cir. 2007) (noting "intent of the alleged infringer to misappropriate the proprietor's good will" as factor in likelihood of confusion analysis); *Babbit*, 38 F.3d at 1179 ("[A] likelihood of confusion can be found as a matter of law if the defendant intended *to derive benefit from the plaintiff's trademark*." (emphasis added)); (*see also* BB, pp. 31, 36-37).  Even the case cited by Sportswear, *Tana v. Dantanna's*, 611 F.3d 767 (11th Cir. 2010), does not support its narrow characterization of the intent requirement.  *Tana* appropriately notes that the relevant intent is the "intent of the alleged infringer *to misappropriate the proprietor's good will*[.]"  *Id.* at 775 (emphasis added).  Sportswear effectively concedes that it possesses the relevant intent, and that this factor favors SCAD under the foregoing, proper analysis, as it merely argues that "the intent to follow a trend or to profit from the popularity of a product or institution" (RB, p. 26; *see also id.* p. 6 (noting that Sportswear's business model is built on "the customer's affiliation with the school")) is insufficient, rather than attempting to establish that it does not possess such an intent to misappropriate and benefit from SCAD's goodwill by creating an association with SCAD.

17

Rather than respond to the foregoing applicable rule, Sportswear tries to sidestep it, citing to the Supreme Court's decision in *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003), dealing with the intersection of the trademark and copyright laws, and a case decided by the Second Circuit (RB, p. 26). Sportswear, however, fails to explain how those opinions bear on the instant case, and indeed, neither affects in any way this Court's precedent establishing that the intent factor is not as narrow as Sportswear interprets it. Sportswear's reliance on an unpublished opinion from its own lawsuit involving a high school in California decided by that state's trial court (*id.*) is likewise meritless, as that case is not only irrelevant, but it is also incorrect for the same reasons noted above, as well as for other reasons (*see, e.g.*, BB, pp. 38-39).

Lastly, the cases cited by Sportswear regarding the intent to copy (RB, pp. 25-26) call Sportswear's credibility into question. Shockingly, Sportswear attributes a quote from a Third Circuit decision to this Court. The cropped statement on which Sportswear bases its argument, and to which it adds emphasis not in the opinion without noting the same, is *not* from this Court's decision in *Brooks Shoe Manufacturing Co. v. Suave Shoe Corp.*, 716 F.2d 854 (11th Cir. 1983), as misrepresented in Sportswear's brief. (RB, p. 25). The quoted language is from *A&H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198 (3d Cir. 2000). Even attempting a generous interpretation of Sportswear's actions is to

18

no avail, as the *Brooks* case does not even cite to *A&H Sportswear*,[9] let alone repeat the quoted language. Nor does even a strained reading of *Brooks* capture the meaning Sportswear improperly attempts to ascribe to it. Far from it, to the extent it is even arguably relevant, *Brooks* supports SCAD's position. 716 F.2d at 860 (referring to "*attempt[s] to capitalize on* the secondary meaning of plaintiff's trademark" (emphasis added)). And the law of this Circuit is *exactly the opposite* of what Sportswear represents: "Intent to copy in itself creates a rebuttable presumption of likelihood of confusion." *Bauer Lamp Co. v. Shaffer*, 941 F.2d 1165, 1172 (11th Cir. 1991); *see also Versa Prods. Co. v. Bifold Co.*, 50 F.3d 189, 206 (3d Cir. 1995) (noting that Eleventh Circuit rule is broader than Third Circuit rule). *University of Alabama Board of Trustees v. New Life Art, Inc.*, 683 F.3d 1266 (11th Cir. 2012), a decision based on First Amendment protections not applicable here, *id.* at 1276, does not change that rule. Sportswear's continued attempts to play fast and loose with this Court's precedent should be rejected.

### E.    Sportswear Misapplies the Actual Confusion Factor

Sportswear's dogged, yet ultimately futile, focus on evidence that a consumer bought SCAD apparel from Sportswear thinking that she was buying from SCAD (RB, p. 27) is fundamentally flawed. As explained in SCAD's

---

[9] *Brooks* was decided before *A&H* in any event, but the *A&H* case also does not cite to *Brooks*.

19

principal brief, the confusion inquiry under the Lanham Act is not so limited: "'Confusion' need not relate to the origin of the challenged *product*. Rather confusion may relate to the public's knowledge that the *trademark*, which is 'the triggering mechanism' for the sale of the product, originates with the plaintiff." *Univ. of Georgia*, 756 F.2d at 1546 (emphasis in original); (BB, pp. 38-40 (citing other authorities)). For this, among other, reasons, Sportswear's attempted syllogism on page 17 of its brief fails: Even if Sportswear has not used SCAD's marks as trademarks, and priority is not an issue, Sportswear can nevertheless be held to infringe.[10]

Sportswear's brief offers no response to this authority, and the arguments that it does present are meritless. First, the evidence of confusion that SCAD has brought forth does not show "only that a University employee discovered Prep Sportswear's website," as Sportswear alleges. (RB, p. 27 n.3). That evidence is an e-mail chain relating that *a parent of a SCAD student* discovered Sportswear's website (Doc. 45-11, p. 1 ("One of my parents found it!")), brought it to a SCAD employee's attention, and that SCAD employees were confused as to whether Sportswear's sale of SCAD merchandise was authorized (Doc. 45-11, p. 1 ("I cannot believe they have the rights to our name????")); *see also id.* (separate e-mail

---

[10] Sportswear's sarcastic comments on page 16 of its brief are inapt for the same reason.

referring to Sportswear's website as a "site for SCAD athletic gear"); Doc. 45-1, p. 37 ("we found out about it through a parent.")).  Sportswear's attempt to dismiss this evidence by mischaracterizing it does not create a genuine issue of material fact.

Sportswear's related assertion, that "there has not been a single instance of actual consumer confusion" (RB, p. 27), is accordingly also incorrect for the foregoing, as well as additional, reasons.  That SCAD was unable to produce further, difficult- and expensive-to-find evidence of actual confusion does not equate to affirmative evidence in Sportswear's favor that "there has not been a single instance of actual consumer confusion." (*Id.*)  Indeed, actual confusion is not required to prove a likelihood of confusion, *see, e.g.*, *Montgomery v. Noga*, 168 F.3d 1282, 1302 (11th Cir. 1999) ("[W]e have held that a plaintiff is not required to provide evidence of actual confusion in order to prove likelihood of confusion."), and no negative inference or presumption arises from even a lack of evidence of actual confusion, *Frehling*, 192 F.3d at 1341 n.5 (rejecting defendant's argument that presumption against confusion should apply, explaining, "[t]his Circuit ... has moved away from relying on survey evidence.  Thus, the failure to adduce such evidence is not damaging to the Plaintiff's case." (citations omitted)).  Thus, Sportswear's attempt to fault SCAD for not conducting an expensive and time-consuming survey (RB, p. 27) is also without merit.  Further undermining

21

Sportswear's position is its reliance on *its own* Statement of Material Facts in support of its motion for summary judgment in making its "single instance" assertion. (*Id.* (citing Doc. 39-2, ¶ 58)). SCAD disputed below, and disputes now, Sportswear's incorrect conclusion and mischaracterization of SCAD's evidence (Doc. 46-1, p. 27), and relying on its own assertions regarding material facts, rather than the non-movant's responsive pleading, in trying to establish entitlement to summary judgment demonstrates the weakness of Sportswear's case. Sportswear's emphasis on and misapplication of this factor (RB, pp. 18, 26) is thus unavailing.

###### F.    Sportswear is Not Entitled to Summary Judgment

Sportswear's argument that SCAD's evidence regarding a likelihood of confusion presents an alternative ground for affirmance (RB, pp. 17-18) should be rejected. To the contrary, the evidence that SCAD brought forth is sufficient to support a grant of summary judgment in *SCAD's* favor, as discussed above and in SCAD's principle brief (BB, pp. 30-40). At an absolute minimum, however, the evidence is sufficient to establish a genuine issue of material fact regarding a likelihood of confusion—and thus the District Court's grant of summary judgment in Sportswear's favor cannot be affirmed on this basis.

Sportswear's citation of *Board of Governors of the University of North Carolina v. Helpingstine*, 714 F. Supp. 167 (M.D.N.C. 1989) to support the opposite result (RB, pp. 27-28) is bewildering. In addition to other reasons the

22

case is distinguishable, that court specifically acknowledged that it was departing from Eleventh Circuit case law, 714 F. Supp. at 172-73. The District Judge in *Helpingstine* explained his decision not to follow *University of Georgia*, stating, "the court is skeptical that those individuals who purchase unlicensed tee-shirts bearing UNC-CH's marks care one way or the other whether the University sponsors or endorses such products or whether the products are officially licensed." 714 F. Supp. at 173. This Court's reasoning in *University of Georgia* is directly to the contrary: "[I]n our view, most consumers who purchase products containing the name or emblem of their favorite school or sports team would prefer an officially sponsored or licensed product to an identical non-licensed product." 756 F.2d 1547 (citing *Nat'l Football League Props., Inc.*, *v. Wichita Falls Sportswear, Inc.*, 532 F. Supp. 651, 659 (W.D. Wash. 1982) (noting that survey revealed that roughly half of all persons shown football jerseys containing names of National Football League teams and players "believed that the manufacturer was required to obtain authorization from the NFL or one of the member clubs in order to manufacture the jerseys")).

For the same reason, *Supreme Assembly*, *Order of Rainbow for Girls v. J.H. Ray Jewelry Co.*, 676 F.2d 1079 (5th Cir. 1982), also relied upon by Sportswear regarding the likelihood of confusion (RB, pp. 20-21, 24), is inapposite. Significantly, in *Supreme Assembly*, the court made key factual findings that

23

distinguish it from the instant case and only reinforce SCAD's position.   In *Supreme Assembly*, the district court made the finding, based on specific evidence presented in the case, that "the historical nature of the fraternal jewelry industry in general and Rainbow jewelry in particular" was such that there was "no historical custom or practice … that would provide a reasonable basis for buyers of Rainbow jewelry to assume that such jewelry can only be manufactured with Rainbow's sponsorship or approval."   *Id.* at 1083-84.   Sportswear, however, has produced absolutely no evidence that would support such factual findings.   To the contrary, the custom and consumer expectations with regard to clothing bearing the trademarks of educational institutions is *exactly the opposite* of the jewelry industry at issue in *Supreme Assembly* in that members of the public do have the expectation that products bearing the mark of a school or sports team are sponsored or licensed by the school or team.   Indeed, a subsequent Fifth Circuit opinion— with facts much like the case on appeal—expressly addressed and dismissed *Supreme Assembly* as applied to collegiate clothing, holding that consumers seeing the emblem or name of a team on or associated with a good or service would assume sponsorship or association between the product's seller and the school.   *Bd. of Supervisors for La. State Univ. Agric. & Mech. College v. Smack Apparel Co*., 550 F.3d 465, 481-82 (5th Cir. 2008).   Sportswear has no evidence to refute—or

even create a genuine issue of material fact regarding—the existence of this custom with regard to collegiate and sports apparel.

In sum, Sportswear's brief provides no basis for granting Sportswear summary judgment or for denying SCAD summary judgment. Instead, it only demonstrates that this Court has already squarely addressed the issues in this case and flatly rejected the vast majority of Sportswear's arguments.

## III.    SCAD Did Not Abandon Its Rights

Contrary to Sportswear's assertions (RB, Part IV), SCAD exercises sufficient control over the use of its trademarks by its licensee, Follett. First, Follett uses SCAD's trademarks only pursuant to a detailed written agreement. (Doc. 39-10). The agreement grants Follett the right to use SCAD's trademarks only "in accordance with designs approved by SCAD," and Follett must remove any goods that SCAD "in its sole discretion" determines should no longer be sold. (*Id.* p. 19).

Second, SCAD's approval process includes control of the quality of the clothing goods themselves. (Doc. 46-2, p. 3 ("During this review and approval process, I review all aspects of the product design … *as well as samples of the actual product (such as the type of t-shirt to be used)*." (emphasis added)). Follett is not permitted to sell, and Sportswear has no evidence that it has sold, any products bearing SCAD's trademarks without SCAD's prior approval. (*Id.* pp. 3-

4).   Sportswear's naked-licensing argument is based entirely on ignoring the foregoing evidence from the SCAD employee responsible for approving the products sold by Follett.  (*Id.* pp. 2-3).  SCAD clearly exercises more than the minimal control necessary to make a trademark license valid.

Sportswear is also incorrect in asserting (in a footnote) that SCAD abandoned the Bee design mark.  SCAD uses the Bee design mark in the exact form as registered, in addition to using the Bee graphic alone and just the word "Bees" that appear in the mark.  (*e.g.*, Doc. 40-5, pp. 6-16).  Moreover, to the extent that Sportswear argues that SCAD has abandoned the mark specifically with respect to apparel, such a claim does not impact SCAD's rights in the trademark registration covering educational services, and as discussed, SCAD's rights in that regard are sufficient to prevent Sportswear's actions.  (*Supra*, Part I; BB, pp. 14-22).  Sportswear has failed to meet the high burden, which includes proof of "intent to abandon on the part of the trademark owner," *Babbit*, 38 F.3d at 1180, necessary to establish abandonment.

## IV.   The Cited Article Was Properly Before the Lower Court

SCAD is entitled to summary judgment without the disputed article.  In the event that this Court rules otherwise, however, the District Court erred in

excluding the article.[11]

### A.    The Article Is Freely Available at the Website Cited by SCAD

Contrary to Sportswear's claims, the article at issue was, and still is, freely available on the Internet.   As a result, the authorities cited by Sportswear in arguing that SCAD was required to produce a print-out of the website (RB, p. 39) are inapplicable.   SCAD explained "how and where [its] counsel found this website," as well as when, and did not "lie in wait," (RB, p. 48, 43).  (Doc. 51-1). Moreover, as clearly explained in SCAD's principal brief, the article's location was moved after SCAD filed its summary judgment reply brief.  (BB, p. 9 n.5). SCAD then documented not only the article's previous location but also provided a new URL where the article is readily available.   (*Id.* & p. 9).   SCAD cannot explain how Sportswear overlooked this information in SCAD's principal brief. Indeed, that Sportswear has yet to type in any of the URLs provided or perform the search SCAD described in order to view the article is astonishing, as are Sportswear's claims that it has "still never seen" the article and it is "impossible to now establish" the article's content.  (RB, p. 38; *see also id.* pp. 47-49).  This is particularly surprising given that the article was the subject of a motion to strike, and Sportswear *never* alleged below that it could not locate the article.  (Docs. 50-

---

[11] Although Sportswear also criticizes SCAD's citation of the Flower declaration (RB, pp. 43), Sportswear did not cross-appeal the District Court's ruling on its motion and that issue is accordingly not before this Court.

1, 52). Indeed, Sportswear's suggestion that, for this reason, SCAD cannot even appeal the lower court's ruling (RB, p. 39) is particularly inappropriate given that Sportswear never raised its inability to locate the article below.[12]

### B. Sportswear's Discovery Requests Were Specifically Directed to First Use Rather Than Use Before 2009

During discovery, Sportswear sought information relating to "first use," *not* "prior use." (BB, pp. 42-43). Contrary to Sportswear's assertion (RB, p. 46), SCAD never stated that it did not know of a *prior use* date—because that question was not posed. The distinction between prior use and first use is a meaningful one in trademark law, and indeed, even Sportswear recognizes the difference (RB, p. 46 ("first use *or* prior use date") (emphasis added)). As a result, the article was outside the scope of Sportswear's discovery requests.[13] For the same reason, there is also no "clear inconsistency between the earlier position and the later position," *Tampa Bay Water v. HDR Eng'g, Inc.*, 731 F.3d 1171, 1182 (11th Cir. 2013), as

---

[12] Similarly, Sportswear waived its authentication and hearsay arguments (RB, p. 47) by never raising them below. Moreover, even assuming *arguendo* admissibility issues (*cf.* Fed. R. Evid. 902(6) (providing that ''[p]rinted material purporting to be a newspaper or periodical'' is self-authenticating)), it is nevertheless appropriate to consider such evidence at the summary judgment stage, *see, e.g., McMillian v. Johnson*, 88 F.3d 1573, 1584 (11th Cir. 1996) (noting that otherwise-admissible evidence is appropriate in inadmissible form during summary judgment proceedings). The Savannah Morning News is a print periodical, *see* http://savannahnow.com/allaccess (noting print subscriptions).

[13] Indeed, Sportswear only alleges vaguely that the article "touch[es] on" the topics of its discovery requests. (RB, p. 43).

required to apply the principle of estoppel. *See also Kernel Records Oy v. Mosley*, 694 F.3d 1294, 1300 n.6 (11th Cir. 2012) (noting that evidence should be excluded "only when '[t]he earlier deposition testimony … consist[s] of clear answers to unambiguous questions which negate the existence of any genuine issue of material fact'") (quoting *Lane v. Celotex Corp.*, 782 F.2d 1526, 1532 (11th Cir. 1986)).

At a minimum, SCAD was substantially justified in not producing the article. (BB, p. 42, n.21). Rather than provide any substantive response to SCAD's argument, Sportswear offers conclusory statements that incorrectly state the applicable rule (RB, p. 45 ("the University ... should be prevented from submitting and relying on such information without first demonstrating that it was substantially justified in not producing the information *and* that its failure was harmless" (emphasis added)). Contrary to Sportswear's misstatement, Rule 37(c)(1) provides a party may use the information at issue if "the failure was substantially justified *or* is harmless." (Emphasis added).

## CONCLUSION

For the reasons stated, this Court should reverse the District Court's grant of Sportswear's motion for summary judgment, reverse the District Court's denial of SCAD's motion for summary judgment, and remand the case for further proceedings.

29

This 23rd day of November, 2015.

<div style="margin-left:45%">

*/s/ W. Scott Creasman*

W. Scott Creasman
Kelly Casey Mullally
Seth K. Trimble
TAYLOR ENGLISH DUMA LLP
1600 Parkwood Circle, Suite 400
Atlanta, Georgia 30339
(770) 434-6868
screasman@taylorenglish.com

*Attorneys for Plaintiff-Appellant*

</div>

## CERTIFICATE OF COMPLIANCE

I hereby certify that:

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 6,969 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii) and 11th Cir. R. 32-4.

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in plain, roman style 14-point Times New Roman.

*/s/ W. Scott Creasman*
W. Scott Creasman
TAYLOR ENGLISH DUMA LLP
1600 Parkwood Circle, Suite 400
Atlanta, Georgia 30339
(770) 434-6868
screasman@taylorenglish.com

*Attorney for Plaintiff-Appellant*

Dated:  November 23, 2015

## CERTIFICATE OF SERVICE

I hereby certify that I have served the foregoing Reply Brief of Plaintiff-Appellant Savannah College of Art and Design, Inc., by ECF filing and by causing a true copy to be deposited in the U.S. Mail, proper postage prepaid addressed to all the parties as follows:

Bradford J. Axel
Leslie C. Ruiter
STOKES LAWRENCE, P.S.
1420 Fifth Avenue Suite 3000
Seattle, Washington 98101-2393
*By ECF filing and U.S. Mail*

Arthur A. Gardner
GARDNER GROFF GREENWALD &
    VILLANUEVA, PC
2018 Powers Ferry Road, Suite 800
Atlanta, Georgia 30339
*By ECF filing*

*Attorneys for Defendant-Appellee*

This 23rd day of November, 2015.

*/s/ W. Scott Creasman*
W. Scott Creasman
TAYLOR ENGLISH DUMA LLP
1600 Parkwood Circle, Suite 400
Atlanta, Georgia 30339
(770) 434-6868
screasman@taylorenglish.com

*Attorney for Plaintiff-Appellant*